407 So.2d 1087 (1982)
The STATE of Florida, Appellant,
v.
James Wesley FRAZIER, Appellee.
No. 81-200.
District Court of Appeal of Florida, Third District.
January 5, 1982.
*1088 Jim Smith, Atty. Gen., and Alan T. Lipson, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender, and Alan R. Dakan, Asst. Public Defender, for appellee.
Before SCHWARTZ, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
We reverse the trial court's order which granted Frazier's motion to dismiss the information charging second-degree murder. The motion, to which the State demurred, asserts that under either of Frazier's statements to the police, viewing the facts and inferences therefrom most favorably to the State, the State would be unable to establish the defendant's guilt or defeat his claim of self-defense. We disagree.
In the defendant's first statement given immediately after the stabbing, he told the police that he and Betty Thomas, his common-law wife, had been drinking all day and that thereafter, he fell asleep on the couch in the living room of their apartment. The defendant woke and "observed the deceased walking toward him. In the past he had been assaulted numerous times by Betty Jean Thomas with a knife and he was afraid. When he observed Ms. Thomas walking toward him, he did not know if she had anything in her hand. Mr. Frazier did not know how he came about getting the knife. The next thing he knew, Ms. Thomas was stabbed."
Six days later, Betty Thomas died. Frazier was arrested and gave a second account of the incident. Again, he related that he and the victim engaged in an all-afternoon outdoor drinking bout of rum and beer. The deceased accused him of having an affair with another woman, and he denied his involvement. They argued, went into their apartment, and the defendant dozed off on the couch to the sound of the deceased's continued accusations. In this version, Frazier "recalled opening his eyes and ... observed Ms. Thomas coming towards him. She had a knife in her hand. He did not really recall what occurred after that. He believes that somehow he got the knife, and swung at her one time, striking her in the neck area. Mr. Frazier also stated that Betty Thomas had cut him numerous times before. He cut her because he knew she was coming back to cut him."
A man, fearless enough to repair with his common-law wife to the apartment he shares with her and go to sleep despite the asserted fact that in the past the woman had directed violence towards him, who awakes to observe his wife coming toward him and either not knowing whether she is armed or how he came into possession of *1089 the knife with which he slays her; or, under his post-arrest version of the event, who sees her with a knife, disarms her, and cuts her "because he knew she was coming back to cut him,"[1] does not, under either circumstance, have such a reasonable basis to fear for his life that, as a matter of law, he cannot be found guilty of homicide so as to warrant a dismissal of the charge against him.[2]See Sanders v. State, 359 So.2d 899 (Fla.3d DCA 1978); Bristow v. State, 338 So.2d 553 (Fla.3d DCA 1976); Jones v. State, 286 So.2d 29 (Fla.3d DCA 1973); Gil v. State, 266 So.2d 43 (Fla.3d DCA 1972).
Moreover, even if, arguendo, one of Frazier's versions of the stabbing were to warrant a dismissal of the charge, a separate inconsistent, but not thoroughly exculpatory, version of the event is evidence of the falsity of the completely exculpatory statement, which not only justifies the rejection of the completely exculpatory statement, but can be used to affirmatively show consciousness of guilt and unlawful intent. United States v. Pistante, 453 F.2d 412 (9th Cir.1971). See Brown v. State, 391 So.2d 729 (Fla.3d DCA 1980).
Reversed and remanded.
NOTES
[1] The quoted statement is certainly susceptible of the interpretation that the defendant stabbed Ms. Thomas to put an end to any future threat.
[2] The defendant's motion requested dismissal, not a reduction of the charge to manslaughter. The State's demurrer only addressed the defendant's request. While the facts contained in the defendant's statements and the circumstances of the assault may not "evince a depraved mind regardless of human life," there may be additional evidence in the State's possession which justifies a second-degree murder charge. The State filed no traverse and did not present to the trial court an arguably admissible "dying declaration" of the victim, which it has referred to on this appeal. We do not consider that evidence on this appeal, except to point out that it may show the second-degree charge to be viable.