NESBITT, Judge.
The defendant appeals his conviction of insurance fraud and grand theft. We reverse.
The defendant, ⅞ Metro-Dade police officer, bought a boat and had it insured with Florida Farm Bureau Insurance Company (Farm Bureau). The defendant was intro *702 duced to Enrique Garcia, a mechanic and owner of OK Mechanic in Hialeah, when he first experienced trouble with the boat’s engine in the summer of 1982. The boat’s engine was repaired twice by Garcia during that time.
In September 1982, the defendant loaned his boat to Edgar Lara, who damaged the engine and outdrive when he ran the boat aground in the Florida Keys. The boat was taken to Garcia’s shop for repairs where sand was discovered in the engine. Garcia testified that he worked on the engine but refused to work on the outdrive since he was unfamiliar with that system. He indicated, however, that a relative of the defendant, named Pedro, worked on the outdrive while it was at his shop. Pedro was the defendant’s uncle.
On September 16, 1982, the defendant’s father and uncle took the boat from Garcia’s shop back to the defendant’s father’s house where it was usually parked. The boat was allegedly stolen sometime between 11 p.m. on September 16 and 7 a.m. the following morning. A police report was filed and a BOLO was issued. In the late morning of September 17, the boat was spotted by a state trooper at the Snapper Creek service plaza on the Florida turnpike extension. The boat had been vandalized and numerous items damaged or stolen. The engine and outdrive had been removed. The boat was taken back to the defendant’s father’s residence.
An insurance claim was filed by the defendant and he gave a statement to Farm Bureau’s insurance adjuster on September 20, 1982. In the statement, the defendant indicated that the boat was stolen between 11:30 p.m. on September 16 and 6:45 a.m. on September 17, and he gave a general description of the damages and stolen parts. The defendant obtained a number of estimates for repairs at Farm Bureau’s request. Ultimately, Farm Bureau issued the defendant a check for $7,125 on his claim.
Subsequent to the recovery of the boat, it was taken back to Garcia’s shop. Garcia testified that he installed in the boat a modified automobile engine he had rebuilt. He further indicated that he placed the valve covers from the original boat engine, which he had previously removed, on the newly installed engine. These covers contained the serial number of the original engine.
Following the completion of the repairs on the boat, the defendant and Robert Graf attempted to take the boat out but the engine would not start. Graf took the boat back to his house to examine and work on the engine. During the time the boat was at Graf’s house, he mentioned to the defendant that the outdrive looked the same as the original one that had been on the boat. The defendant responded that it was and, according to Graf’s testimony, gave some “simple” and “plausible” explanation. Graf, who was a trooper with the Florida Highway Patrol, asked a friend of his at the state attorney’s office during a casual conversation whether he could check and see if an insurance claim had been made. Graf testified that he had no intention of starting an investigation but an insurance fraud investigation was the result of his inquiry.
The investigation led to the police seeking a search warrant. On the evening the boat was seized, an officer approached the defendant’s father’s house and informed the defendant’s father that a search warrant was on its way. The defendant’s father called the defendant who arrived on the scene shortly thereafter. The defendant consented to a search of the boat but the lead officer on the scene decided to wait until the warrant arrived. While waiting for the warrant, the defendant voluntarily took the officer to his apartment to look for papers dealing with the boat repairs. No papers were found at that time. The defendant and the officer returned to the boat where they awaited the warrant. The officer testified that he avoided speaking with the defendant about the case because he was not the lead investigator on the case.
When the lead investigator arrived with the search warrant, a search of the boat *703 was commenced. The search revealed that the serial numbers on the valve covers matched the serial number on the original engine that had allegedly been stolen. The defendant was read the Miranda[1] rights and asked about the serial number. He indicated to the officer that he did not know why the numbers matched and that a friend of his had obtained the parts to fix the boat. The defendant further indicated that the boat had been. repaired at a friend’s shop in Hialeah. The officer testified that when asked the friend’s name, the defendant said he could not recall. The defendant testified that at this point the officers, were beginning to accuse him of things he had not done so he “clamped up.”
The defendant was charged in a two-count information with insurance fraud and grand theft. During the trial, the defendant’s motions for judgment of acquittal at the close of the state’s case and at the close of all evidence were denied. He was convicted on both counts and this appeal followed.
The state’s case against the defendant was based wholly on circumstantial evidence. The long-established legal standard on the sufficiency of evidence to be applied in cases where a conviction is based on circumstantial evidence was succinctly stated by the supreme court in McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla.1977):
Where the’ only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt[,] a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. Davis v. State, 90 So.2d 629 (Fla.1956); Mayo v. State, 71 So.2d 899 (Fla.1954); Head v. State, 62 So.2d 41 (Fla.1952).... In applying the standard, the version of events related by the defense must be believed if the circumstances do not show that version to be false. Mayo v. State, above; Hol-ton v. State, 87 Fla. 65, 99 So. 244 (1924).[2]
The defendant’s version of the events was simple. His boat was taken to Garcia’s shop for repairs. Garcia worked on the engine and, in doing so, removed the valve covers which reflected the engine serial number. The defendant’s uncle, Pedro, told the defendant he had replaced the outdrive on the boat. On September 16, 1982, the boat was taken from Garcia’s shop by Pedro and the defendant’s father to the defendant’s father’s house. That night the boat was stolen. The boat was recovered the next day and the engine and outdrive were missing. In addition, a number of other items wereeither missing or damaged. The defendant had not seen the boat between the time it was initially taken to Garcia’s shop for repairs and when it was recovered after the theft. Therefore, any information the defendant had concerning what was done to the boat prior to its theft necessarily came from his father or uncle. An insurance claim was filed and the defendant gave a statement to the insurance adjuster for Farm Bureau which included a run-down of what the defendant believed to be the damaged and stolen items from the boat. The defendant indicated to the adjuster that this information was “true and correct to the best of [his] knowledge.” The boat was again taken to Garcia’s shop for repairs. Garcia installed a modified automobile engine he had rebuilt, utilizing the valve covers from the original engine. The defendant’s uncle, Pedro, repaired the original outdrive and replaced it on the boat. It was not until later, however, after the insurance claim was settled, that the defendant became aware that the original outdrive had been repaired and replaced on the boat. Likewise, it was not learned until much later that the valve covers from the original engine had been reinstalled by Garcia on the newly installed engine.
*704 It was the state’s burden to establish beyond a reasonable doubt that the defendant’s version of events, his “reasonable hypothesis of innocence,” was false. See Mc-Arthur and cases cited therein. Not only did the state’s evidence fail to refute the defendant’s version of the events, but it actually corroborated that version.[3] The fact that , the defendant could not have his uncle testify to further corroborate his testimony because of Pedro’s death in 1983 does not weigh against the defendant. The defendant need not prove his innocence; it is the state’s burden to prove guilt beyond a reasonable doubt. Where, as here, the evidence is consistent with a reasonable hypothesis of innocence, the defendant’s innocence has not been disproved and the state has simply failed to carry its burden of proof.
Accordingly, the judgment of conviction under review is reversed and the cause remanded with directions to discharge the defendant.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The circumstantial evidence standard is so well established that a string citation is unnecessary. See the discussion and cases collected in Jones v. State, 466 So.2d 301, 318-26 (Fla. 3d DCA 1985) (Hubbart, J., dissenting; appendix to dissenting opinion).

. Since the state failed to prove that the defendant gave any false exculpatory statements, the rule sanctioned by this court in Brown v. State, 391 So.2d 729 (Fla. 3d DCA 1980), permitting the admission of a false exculpatory statement as substantive evidence of guilt is not applicable here. See also State v. Frazier, 407 So.2d 1087 (Fla. 3d DCA 1982).