388 So.2d 1022 (1980)
Hayward LANE, Appellant,
v.
STATE of Florida, Appellee.
No. 52176.
Supreme Court of Florida.
September 25, 1980.
*1023 Virgil Q. Mayo, Public Defender, and H. Guy Green, Asst. Public Defender, Marianna, for appellant.
Jim Smith, Atty. Gen., and A.S. Johnston and Raymond L. Marky, Asst. Attys. Gen., Tallahassee, for appellee.
PER CURIAM.
The appellant, Hayward Lane, was convicted of murder in the first degree. The trial judge imposed the death sentence in accordance with the jury's advisory sentence recommendation. We have jurisdiction.[1]
For the reasons expressed, we find we must set aside this conviction and sentence because competency of the appellant at the time of trial was not properly determined under the standards set by the United States Supreme Court in Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), and prior cases.
We have further considered the issue of whether the State of Florida has territorial jurisdiction to try the appellant for first-degree murder. We find jurisdiction does exist because essential elements of the offense may be able to be established beyond a reasonable doubt in Florida even though the fatal blow and the victim's death occurred in Alabama. We find that upon being determined competent, the appellant may be tried in the State of Florida.
The following are the relevant facts necessary to determine the controlling issues in this cause. On June 17, 1975, the appellant, a resident of the State of Alabama, drove to Holmes County, Florida, which borders on Alabama, to discuss the purchase of a car engine at Odie Slay's junkyard. At the junkyard appellant talked with Earl Slay who was awaiting his brother Odie's return. After Odie's arrival, he and appellant discussed their business. Appellant drove off in his car while Odie's brother, Earl, stayed to talk for another thirty minutes. The next morning Earl's dead body was discovered lying aside a bridge in nearby southern Alabama. Appellant was taken into custody on June 18, 1975, the day after the offense was committed. He waived extradition to Florida, made a confession, and accompanied state investigators to the scene of the crime to retrace the route he had taken when he killed the victim, Earl Slay. Appellant showed an investigator the dirt road in Florida where he stopped the victim, Earl Slay, and stated he there ordered the victim to hand over his wallet. The confession of the appellant reflects that at this point he hit the victim over the head after which the victim ran into an adjacent soybean field. The appellant followed the victim and hit him several more times, and carried him to the trunk of his car. The confession of the appellant concludes that he drove to the bridge in Alabama, got the victim out of the trunk, and beat him again.
The physical facts establish that an investigation of the Holmes County, Florida, dirt road revealed nothing to indicate that the blow was struck there although there was evidence of bloodstains in an adjacent soybean field. The physical facts at the Alabama bridge reflect that there were two sets of footprints for two different persons, and that there was blood on the vegetation and a substantial amount of blood under the body of the victim. A toxicologist who investigated the death and performed an autopsy on the body testified that the victim died at the site in Alabama and that there were three possible independent causes of death, including (1) the severing of the left maxillary artery, (2) an intercranial hemorrhage, and (3) a ruptured liver. There was considerable blood beneath the body at the death site in Alabama, which is consistent with the severing of the artery at that location. An expert witness who examined the trunk of appellant's car found bloodstains inside but testified that the amount of blood found in the trunk would have had to be only from a superficial cut and not a major wound. Further, a witness *1024 testified it would take twenty-five to thirty-five minutes driving time from the location where the victim was first struck in Florida to the bridge site in southern Alabama where his body was found.
On June 25, 1975, eight days after the offense, counsel filed a suggestion of insanity. The two doctors appointed by the court reached opposite conclusions from their respective examinations; one found the appellant was competent, and the other found that he was not competent to stand trial. The court ordered a third examination by another physician who concluded that the appellant was not competent to stand trial. On December 16, 1975, six months after the offense, the court determined the appellant was not mentally competent to stand trial and committed him to the Division of Mental Health. On July 8, 1976, a competency hearing was held and it was determined after the court received medical testimony from a Florida State Hospital psychiatrist that the appellant was competent to stand trial and able to assist counsel in the preparation of his defense. Subsequent motions suggesting insanity were filed on July 28, 1976, and March 18, 1977. On April 22, 1977, the trial court held a hearing to consider appellant's motion for continuance on the assertion by appellant's counsel that:
[R]easonable grounds do exist that the defendant may be insane at this time. And because of the physical nature and seriousness of this charge it asks the Court to continue the trial ... and further to set a hearing pursuant to Rule 3.210, Florida Rules of Criminal Procedure, and determine the sanity at the time of trial.
At the hearing on the motion, the appellant presented a psychiatrist and a psychologist who testified that neither could determine whether the appellant was competent to stand trial and suggested that the appellant needed to be examined at Florida State Hospital for ten days to two weeks in order to determine competence. The psychiatrist further testified that he could not make a recommendation as to whether the appellant could assist counsel in the preparation of his defense.
The state presented the testimony of a state psychiatrist who approximately nine months previously had examined the appellant at Florida State Hospital and had found him competent. The state psychiatrist testified that she had examined the appellant on the day of the hearing but that she did not try to ascertain at that time whether the appellant knew and understood the events that were transpiring. She further opined that on or about July 7, 1976, when he left the hospital, the appellant did have the ability to assist counsel in his defense and understand the nature of the charges, but on the date of the hearing stated: "It's hard to tell, really, on the basis of this brief meeting with him, I think that-I hate to speculate-I would not express any definite opinion." She related that the appellant was depressed but in contact with reality; however, she did not "want to make any firm statements on my today's observation."
The record reflects that the appellant has an intelligence quotient of 56, which places him in a retarded classification. There was also testimony of a jailer that the appellant had refused to take his medication.
The trial court denied the motion for continuance, holding that: "[T]his defendant is now malingering and that there's no reason why he cannot participate with his counsel in the defense of this case and I'm going to require that this case go to trial Monday morning as scheduled."
The trial commenced as ordered by the trial judge. The jury found the appellant guilty of first-degree murder and recommended the imposition of the death sentence. During the sentencing phase of these proceedings, three psychiatrists testified and although there was evidence of mental disorder, all three agreed that the appellant knew right from wrong at the time of the commission of the crime. The trial judge followed the recommendation of the jury and imposed the death sentence.

Competency to Stand Trial
The law in this area has been established by a series of cases of both the United *1025 States Supreme Court, Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Pate v. Robinson, 383 U.S. 375 (1966); Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), and this Court in Jones v. State, 362 So.2d 1334 (Fla. 1978), and Fowler v. State, 255 So.2d 513 (Fla. 1971). We implemented the constitutional mandate in Dusky in our Rule of Criminal Procedure 3.210.
The United States Supreme Court in Dusky restated the historical rule that a person accused of a crime who is incompetent to stand trial shall not be proceeded against while he is incompetent. The law is now clear that the trial court has the responsibility to conduct a hearing for competency to stand trial whenever it reasonably appears necessary, whether requested or not, to ensure that a defendant meets the standard of competency set forth in Dusky. The United States Supreme Court reiterated this directive in Drope and said:
The import of our decision in Pate v. Robinson is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated... .
.....
Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.
420 U.S. at 180-181, 95 S.Ct. at 908.
This requirement for a competency hearing was addressed by us in Fowler v. State, where we held that it is obligatory on the trial court to fix a time for a competency hearing if there are reasonable grounds to believe that the defendant is not competent to stand trial.
The trial court at a hearing to determine competency to stand trial must apply the Dusky test which requires a determination of (1) whether the defendant has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and (2) whether he has a rational as well as a factual understanding of the proceedings against him. We adopted this competency test almost verbatim in our Rule of Criminal Procedure 3.210(a)(1). It should also be recognized that Dusky held that it was not sufficient for a trial judge to find that "the defendant is oriented to time and place and has some recollection of events." 362 U.S. at 402, 80 S.Ct. at 789.
In the instant case none of the three medical experts who testified at the continuance hearing were able to say that the appellant was competent to stand trial. The state urges that the appellant had previously been found competent, and that even if he was incompetent it was by his own actions. The finding of competence to stand trial made nine months prior to the hearing does not control in view of the evidence of possible incompetency presented by the experts at the hearing on the motion for continuance. In Bishop v. United States, 223 F.2d 582 (D.C. Cir.1955), reversed, 350 U.S. 961, 76 S.Ct. 76 S.Ct. 440, 100 L.Ed. 835 (1956), the facts in the lower court opinion reflected that the defendant had no mental disorder a month prior to the trial. The United States Supreme Court reversed, requiring the trial court to have a hearing on the sanity of the defendant at the time of trial. Further, the issue of competency to stand trial clearly can be raised at any time, including during the trial proceedings. In Drope, the defendant shot himself in the foot during the course of the trial. Although the state asserted that this conduct was intentionally done to avoid trial, the court held that such conduct contributed to the need for a competency hearing. What *1026 activates the need for a competency hearing is some type of irrational behavior or evidence of mental illness that would raise a doubt as to the defendant's present competence. See also Bell v. State, 318 So.2d 498 (Fla. 2d DCA 1975), and Harrell v. State, 296 So.2d 585 (Fla. 1st DCA 1974).
We are not unmindful of the problem raised by the trial court and the state that a defendant could directly cause his incompetency by intentionally failing to take the proper medication for his mental condition. We answered the reverse of that issue in Mines v. State, 390 So.2d 332 (Fla. 1980), in which the defendant contended the trial court erroneously found him competent to stand trial because such finding was made while the appellant was being administered psychocoptic drugs to control his mental condition. We held that the appellant clearly had the ability to understand the proceedings and to assist counsel in his defense and the "fact that appellant's competency is the result of approved medical treatment and medical science does not invalidate that finding of competency." We rejected the argument that the appellant was "only chemically competent."
We reject the state's contention that if Lane is incompetent, it is only through his own actions and the cycle will surely repeat itself. Intentional action by a defendant does not avoid or eliminate the necessity of applying the test of whether a defendant has the sufficient present ability to assist counsel with his defense and to understand the proceedings against him. The record is clear in this case that there was doubt concerning the appellant's present competency at the time of trial. We find the law required further examination and hearing in this cause. Under the circumstances, we find that the judgment entered must be vacated.

Jurisdiction
The factual situation in this cause presents a legal issue which has been discussed by courts for centuries. The instant offense was commenced in the State of Florida and concluded in the State of Alabama where the victim died. The appellant contends that the State of Florida has no jurisdiction to charge or try with first-degree murder because neither the death occurred in the State of Florida nor was it established that the fatal blows were struck in the State of Florida. The state not only concedes its inability to establish beyond a reasonable doubt that the fatal blow was struck in the State of Florida, but its evidence indicates that the fatal blow or blows were probably struck in the State of Alabama. The state, however, contends that if an offense is commenced in Florida and consummated outside the state, Florida retains jurisdiction to try this defendant for first-degree murder under the provisions of sections 910.005 and 910.01, Florida Statutes (1977). We find the legislature of the State of Florida by the provisions of section 910.005(2) grants Florida jurisdiction to try this appellant for first-degree murder.
Venue should not be confused with jurisdiction although some of the original common law cases appear to concern venue issues. Venue cases are inapplicable to the instant case. It is for that reason that section 910.01 is not applicable since its purpose is to establish venue and not jurisdiction.
Jurisdiction is the very power of the state to exert the influence of its courts over a criminal defendant, and it cannot be waived. Venue on the other hand is merely a privilege which may be waived or changed under certain circumstances. We agree with the distinction drawn between venue and jurisdiction that was outlined by the Supreme Court of Maine in State v. Baldwin, 305 A.2d 555, 558 (Me. 1973):
We see a vast difference in the policy considerations governing the adoption of a rule as to venue and the adoption of a rule as to territorial jurisdiction.
When a crime is committed in the State of Maine, the State of Maine has sovereign power and a duty to assert its jurisdiction through the power of its courts to prosecute the perpetrators of such crime.

*1027 The sovereign power of the State exists whether the venue is properly laid in one county or another so long as the appropriate venue is within the territorial jurisdiction of the State.
See also Annot., 67 A.L.R.3d 988 (1975).
The issue in this cause is the jurisdictional authority of the State of Florida to proceed to try this appellant. The general rule developed from the common law and expressed in most statutes in this country is that a homicide is committed in the state where the fatal wound or blow was inflicted though the deceased died in another state. See 40 Am.Jur.2d, Homicide § 198 (1968); 3 Warren on Homicide § 298 (1938); 4 Wharton's Criminal Law and Procedure § 1507 (1957). The common law rule is best expressed in 1 M. Hale, Pleas of the Crown 426 (1736), which states:
At common law, if a man had been stricken in one county and died in another, it was doubtful whether he were indictable or triable in either, but the more common opinion was, that he might be indicted, where the stroke was given, for the death is but a consequent, and might be found tho in another county, 9 E. 4. 48. 7 H. 7.8. and if the party died in another county, the body was removed into the county, where the stroke was given, for the coroner to take an inquest super visum corporis, 6 H. 7.10. but now by the statute of 2 & 3 E.6. cap. 24. the justices or coroner of the county, where the party died, shall inquire and proceed, as if the stroke had been in the same county, where the party died.
The reason and necessity for this common law rule was that early juries were not selected merely to hear evidence and pass upon it; they were witnesses in their own communities as well as the triers of the fact and were supposed to act on knowledge derived from their presence in the community. The rule came into being because if a fatal blow was given in one county and death happened in another, the homicide could not be within the knowledge of the jurors of either county. The result was that a defendant could not be tried in either county. This problem was settled by carrying the dead body into the county where the wound was given so that death could be shown by view, and the offense might be tried in the county where the blow was struck. See Tyler v. People, 8 Mich. 320, 335 (1860) (Campbell, J., dissenting). At common law, the trial always had to occur in the county where the mortal blow was given because in the English terminology "for that alone is the act of the party, and the death is but a consequence... ." 1 E. East, Pleas of the Crown 361 (1803). See generally People v. Duffield, 387 Mich. 300, 197 N.W.2d 25 (1972); Annot., 67 A.L.R.3d 988 (1975).
By section 910.005, we have broadened our jurisdiction to allow the trial of the homicide offense when the death occurs in the state or when an essential element of the homicide occurs in Florida even though the fatal blow was struck outside the state. The applicable provisions of section 910.005 provide:
(1) A person is subject to prosecution in this state for an offense that he commits, while either within or outside the state, by his own conduct or that of another for which he is legally accountable, if:
(a) The offense is committed wholly or partly within the state;
.....
(2) An offense is committed partly within this state if either the conduct that is an element of the offense or the result that is an element, occurs within the state. In homicide, the "result" is either the physical contact that causes death, or the death itself; and if the body of a homicide victim is found within the state, the death is presumed to have occurred within the state. [Emphasis added.]
Subsection (2) in its first sentence allows Florida jurisdiction over offenses committed partly within the state when conduct that is an element of the offense occurs within the state, or the "result" that is an element occurs within the state. As to the second, when homicide is the offense, the *1028 "result" may be either the physical contact or blow that causes the death or the fact that the death itself occurs in Florida.
The appellant in this cause was charged with having, in Holmes or Walton County, Florida, "did unlawfully from a premeditated design to effect the death of Earl D. "Bud" Slay or while the said Hayward Lane was in perpetration of or in the attempt to perpetrate a robbery, the said Hayward Lane did kill the said Earl D. "Bud" Slay by striking or beating him with a tire tool or other dull instrument." One of the essential elements of this offense is the premeditated design of the appellant to effect the death of the victim or, in the alternative, the perpetration of or an attempt to perpetrate a robbery upon the victim. It is our view that if either of these alternative essential elements of the offense occurred within the State of Florida, then Florida has jurisdiction to try the appellant.
A person who commits a crime partly in one state and partly in another state may be tried in either state under the sixth amendment of the United States Constitution. We agree with the Supreme Court of Vermont which stated in State v. Harrington, 128 Vt. 242, 250, 260 A.2d 692, 697 (1969):
It is not essential to criminal responsibility that the accused do every act necessary to accomplish the crime within the jurisdiction where he is prosecuted.... Where the crime is composed of an interstate series of acts, it is jurisdictionally competent for a state to attach legal consequences to any overt act committed within its boundaries, even though the final impact and injury may occur elsewhere. [Citations omitted.]
This principle is more appropriate today than it ever was in view of the increased transient nature of our society. We recognize that this holding grants to the State of Florida broader jurisdiction than many of our other sister states, but we find it is allowed by the United States Constitution and has been directed by the legislature of this state. This broader jurisdiction nonetheless requires that the prosecution establish beyond a reasonable doubt that essential elements of the offense were committed within the jurisdiction of the State of Florida. In the instant case that would mean establishing either that the premeditation to murder the victim was formulated in the State of Florida or that the underlying felony, in this case the robbery, occurred in the State of Florida.
Under the instant circumstances, our holding that Florida has jurisdiction to try the appellant is supported by the decision of the Supreme Court of Indiana in Conrad v. Indiana, 262 Ind. 446, 317 N.E.2d 789 (1974). In Conrad the formulation in Indiana of the premeditated design to effect the death of a victim coupled with a continuous course of action commenced in Indiana to carry out that purpose was held sufficient to give Indiana jurisdiction even though the fatal blows and death of the victim occurred in the State of Ohio.
It is important to recognize that this territorial jurisdictional issue is a factual determination which is within the province of the jury to resolve under appropriate instructions. See Commonwealth v. Bighum, 452 Pa. 554, 307 A.2d 255 (1973). In Conrad the court presented the jury with instructions which, although adequate, were not a model of clarity.[2]
*1029 We agree with the weight of authority that this territorial jurisdictional issue must be proved beyond a reasonable doubt. See Annot., 67 A.L.R.3d 988 (1975). A minority view holds that territorial jurisdiction must only be proved by a preponderance of the evidence. See Cauley v. United States, 355 F.2d 175 (5th Cir.1966); People v. Cavanaugh, 44 Cal.2d 252, 282 P.2d 53 (1955).
Given the facts in this cause, we find that the jury instructions were too general. Upon any retrial of this cause, specific instructions must be given which require the jury to find beyond a reasonable doubt that either: (1) the fatal blow to the victim occurred in Florida, (2) the death of the victim occurred in Florida, or (3) an essential element of the offense which was part of one continuous plan, design and intent leading to the eventual death of the victim occurred in Florida.
Although the United States Supreme Court has not directly addressed the issue of double jeopardy in this type of interstate offense, we believe under the separate sovereignty doctrine set forth in Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), and United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), that either or both the sovereign State of Alabama and the sovereign State of Florida could try the appellant under the circumstances of this cause.
The only other issue material to a retrial concerns the appellant's confession. From the evidence in this record which includes the tape recording of the confession, we find no error in the trial court's finding of voluntariness.
For the reasons expressed in this opinion, we vacate the judgment and sentence. Upon his being found competent to stand trial, we find that the appellant may be retried in the State of Florida for first-degree murder in accordance with the jurisdictional guidelines set forth herein.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON, ENGLAND and ALDERMAN, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion.
BOYD, Justice, concurring in part and dissenting in part.
I concur with that portion of the Court's opinion holding that the State of Florida has territorial jurisdiction of the crime charged and proven in this case.
I dissent from that portion of the opinion that determines that the appellant's conviction must be reversed. The trial court substantially complied with Florida Rule of Criminal Procedure 3.210(a)(1) when, at the hearing on the motion for continuance, it heard presentations from both sides on the issue of the appellant's competence to stand trial.
Based on all of the evidence presented at that hearing, the court found the appellant competent and ruled that the case would proceed to trial. The record shows that there was sufficient legal basis for this determination. Therefore, we should not disturb the judge's ruling.
I would affirm the conviction. Furthermore, since the death penalty is by law appropriate to this case, I would also affirm the sentence of death.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] The jury in Conrad was given the following instruction:

[I]f you find from the evidence that the killing of [the victim] ... occurred in the State of Ohio, but that the killing was not a part of a common plan, design, and intent to kidnap and kill [the victim] .. . which originated in Wayne County, Indiana, and was not part of one continuous course of action by the defendant which originated and commenced in Wayne County, Indiana, but that the intent to kill was arrived at and the fatal blow struck in the State of Ohio and that such intent and action originated there and after the commission of the offense of kidnapping in the State of Indiana and that the same was not part of one continuous plan, design and intent, and not the result of one continuous course of action by the defendant, but was a separate and independent set of acts occurring outside of the State of Indiana, then the State of Indiana would have no jurisdiction to prosecute the defendant for the offense of murder....
[Emphasis deleted.]
262 Ind. at 450, 317 N.E.2d at 791.