**Scott Allen McKINNEY,**
**Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 71A03–8902–CR–45.

Court of Appeals of Indiana,
Third District.

May 3, 1990.

David T. Ready, South Bend, for defendant-appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Jane A. Morrison, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

This is an appeal challenging the conviction of Scott Allen McKinney in the St. Joseph Superior Court. McKinney was convicted of homicide and on June 25, 1988, was sentenced to 50 years in prison. McKinney's motion to correct errors was overruled on November 14, 1988. McKinney appealed, and on February 10, 1989, the record of proceedings was filed in this court.

McKinney presents six issues for our consideration, which we consolidate as follows:

(1) Whether the trial court erred in denying McKinney's motion to dismiss for lack of territorial jurisdiction.

(2) Whether the trial court erred in refusing McKinney's tendered jury instruction which would have instructed the jury as to territorial jurisdiction.

(3) Whether the trial court erred in not instructing the jury on the issue of territorial jurisdiction.

(4) Whether the trial court erred in permitting a witness to testify on redi-

rect examination that McKinney had been sentenced to prison for robbery.

Because we reverse and remand for new trial, we address only the first three issues.

### Facts

Scott McKinney was driven by a friend to Laura, Ohio, to visit David Fox at his home. On September 23, 1987, McKinney arrived at the home of Ron and Sheila McKinney, his brother and sister-in-law, in South Bend, Indiana. He was driving a truck loaded with television sets, video-cassette recorders and other equipment. He told his brother that he had killed a man and showed him a man's leg beneath the equipment. McKinney asked his brother if he would sell the equipment and Ron McKinney agreed to do so. Among the possessions in the truck was David Fox's checkbook, which they burned. McKinney told his brother that he was going to dump the body in a swampy area. He then drove away with the body in the truck. The next morning, McKinney hosed out the bed of the truck and drove it to Gary, Indiana, where it was later found by police.

McKinney subsequently told his mother, Prudence Dorsey, and his younger brother, Mark McKinney, that he had killed David Fox in Ohio and had dumped the body near the Carborundum plant where he worked. After the body had been discovered McKinney told Duane McDonald, a co-worker at Carborundum, that he had killed the man and dumped the body. He told Carol Denton, however, that he and Fox had returned to South Bend and that his brother, Ron McKinney, had murdered Fox.

The body was found on September 26, 1987, and was subsequently identified as that of David Fox. The truck found in Gary was also identified as belonging to David Fox. Dr. David Jentz, pathologist, determined that the cause of death was a gunshot wound to the back of the head and that death had occurred approximately 48 hours before the autopsy. He testified that Fox would have died within minutes of receiving the wound.

Trial was to a jury in St. Joseph County. At trial McKinney did not testify and presented no witnesses on his behalf.

### I.

McKinney first contends that the trial court erred in denying his motion to dismiss for lack of territorial jurisdiction. McKinney moved to dismiss after opening statements and after the State had begun to present evidence. The trial court did not immediately rule on McKinney's motion, but allowed the State to continue to present evidence until the State could file a brief in response and the trial court could hear arguments. The grounds for McKinney's objections were that State's witnesses had testified that McKinney had told them that he killed David Fox in Ohio. Specifically, McKinney's mother and younger brother testified that McKinney had told them the murder had occurred in Ohio. Carol Denton, however, testified that McKinney had told her that McKinney's brother, Ron, had killed Fox in Indiana. Others testified that McKinney had told them he murdered Fox, but their testimony did not indicate where the murder took place.

A person may be convicted of a crime in Indiana if either the conduct or the result, that is an element of the offense, occurred in Indiana. IC 35–41–1–1(a)(1). When the offense is homicide, either the death of the victim or the bodily impact causing death constitutes the result for purposes of prosecution in Indiana. Moreover, it is presumed that a homicide victim, whose body is found in Indiana, has been murdered in Indiana. IC 35–41–1–1(b). In this respect Indiana follows the Model Penal Code. Model Penal Code, § 1.03 (Proposed Official Draft 1962). The result intended by this statute is that Indiana would have jurisdiction if the wound or injury was received, the victim died, or the defendant acted in Indiana. Model Penal Code, § 1.03, *supra*, comment 8. The presumption insures that a murder defendant cannot confound the courts and avoid or delay prosecution by murdering his victim in one state and dragging the dead body into another.

■ The presumption that a homicide victim found in the state was murdered in the state leads to the conclusion that the state has territorial jurisdiction to prosecute the perpetrator. Territorial jurisdiction is not necessarily thought of as an element of a crime. Nevertheless, the Model Penal Code makes explicit the conclusion that territorial jurisdiction is a fact that must be established. Model Penal Code § 1.13(9)(c). Indiana statutes do not define jurisdiction as an element of the offense; however, where the law has established the necessity of a certain fact for an accused to be guilty of an offense, the existence of that fact is treated much like an element of the offense. *See McGowan v. State* (1977), 267 Ind. 16, 366 N.E.2d 1164; *Sumpter v. State* (1974), 261 Ind. 471, 306 N.E.2d 95; *Young v. State* (1972), 258 Ind. 246, 280 N.E.2d 595. In this case then territorial jurisdiction is an element of the offense that must be proved by the state.

■ That territorial jurisdiction is to be proved by the prosecution is also supported by the law's treatment of venue.[1] Although venue is not an element of a criminal offense, but an essential fact, *Sizemore v. State* (1979), 272 Ind. 26, 31, 395 N.E.2d 783, 787, the State must nevertheless prove proper venue in the same manner as the essential elements of the crime defined by statute, although by a preponderance of the evidence. *Morris v. State* (1980), 274 Ind. 161, 163, 409 N.E.2d 608, 610. We conclude, however, that the State must prove territorial jurisdiction beyond a reasonable doubt. Several factors compel us to reach this conclusion. Jurisdiction may not be waived or conferred by consent. To establish that a court acts with authority when it convicts a defendant, it is necessary that it demonstrate its authority employing the highest standard of proof. *State v. Baldwin* (Me.1973). 305

A.2d 555, 559. Other jurisdictions would be more likely to accord deference to a conviction in Indiana if Indiana has proven jurisdiction by the highest standard. *Id.* at 560. Moreover, requiring the state prove jurisdiction beyond a reasonable doubt avoids the confusion that would result if the jury were presented differing standards of proof for different elements. Model Penal Code, § 1.12, Comment 2.

■ In most cases it is not difficult for the State to prove territorial jurisdiction. However, in cases such as this, where a body is found in a location other than where the murder may have taken place, state law aids the prosecution with a presumption. The location of the body is the proved fact from which can be inferred a further fact, that the victim was murdered within state boundaries. The Indiana legislature did not, however, establish guidelines as to how the courts should treat this presumption. The Model Penal Code would treat statutory presumptions as permissive. Model Penal Code, § 1.12(5)(b). While the presumed fact must be proven beyond a reasonable doubt, the jury may regard the facts giving rise to the presumption as sufficient evidence of the presumed fact. The jury is permitted to infer jurisdiction upon proof of the prerequisite fact that the body was found in Indiana. Model Penal Code, § 1.12(5)(b) and Comment 7. Furthermore, the court need not submit the question to the jury if it can determine that no reasonable juror could fail to find the presumed fact beyond a reasonable doubt. *See; McGowan v. State, supra; Young v. State* (1972), 258 Ind. 246, 250, 280 N.E.2d 595, 597–98. (If the defendant failed to meet the burden of going forward with disputive evidence, the legal presumption is sufficient to establish a *prima facie* case in favor of the State.)

Because the prosecution must prove territorial jurisdiction, the issue must be sub-

---

**1.** The defendant has a constitutional right to be tried in the county in which the crime was committed. *Woodall v. State* (1974), 162 Ind. App. 39, 317 N.E.2d 900, 901. McKinney does not raise the issue of venue in his brief and, therefore, waives it. Venue must be distinguished from territorial jurisdiction, although

Indiana courts have at times confused the two. *See Thomas v. State* (1981), 275 Ind. 499, 417 N.E.2d 1124, 1127. Venue refers to the proper county in which to try the case. Territorial jurisdiction is subject matter jurisdiction and refers to the authority of the State of Indiana through its courts to enforce its laws.

mitted to the jury unless the court determines no reasonable jury could fail to find territorial jurisdiction beyond a reasonable doubt. McKinney argues the court erred in overruling his motion to dismiss because the State's evidence showed that Fox was killed in Ohio and brought to Indiana. We disagree.

■ The court upon motion may dismiss an information if there exists a jurisdictional impediment to convicting the defendant for the offense charged. IC 35–34–1–4(a)(10). A motion to dismiss based upon subject matter jurisdiction may be made at any time during the proceedings. IC 35–34–1–4(b). McKinney's motion was based on state's evidence, which consisted of conflicting statements that McKinney made to different witnesses. The evidence also shows that someone drove McKinney to Ohio; that when he returned to South Bend he was driving Fox's truck; that he arrived with Fox's body hidden under Fox's possessions in the back; and that McKinney dumped the body in St. Joseph County. There is no evidence other than hearsay that shows Fox died or was wounded in Ohio. We find that this evidence is not sufficient to grant a motion to dismiss for lack of territorial jurisdiction.

## II.

■ McKinney next argues that the trial court erred when it refused his tendered instruction which would have told the jury that if it found that Fox was shot in Ohio and died in Ohio, it must return a verdict of not guilty. In order to determine whether the trial court correctly refused to give a tendered instruction, the appellate court must determine (1) whether the tendered instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Richey v. State* (1981), Ind., 426 N.E.2d 389, 395. We conclude that there is evidence in the record to support giving the instruction and that no other instruction covered the instruction tendered. The question remains whether the tendered instruction correctly states the law. We conclude that it does not.

■ We have already concluded that the prosecution must prove territorial jurisdiction beyond a reasonable doubt and that state law provides a presumption in favor of territorial jurisdiction where the body is found within state boundaries. The jury, therefore, must be instructed that the presumption exists. *See* Model Penal Code § 1.12(5)(a). Although the defendant or the State may have introduced evidence that tends to rebut the presumption, the presumption has not disappeared. Rather, the presumption is permissive. Although the jury must find that Fox was murdered in Indiana beyond a reasonable doubt, it may infer territorial jurisdiction if the prosecution has proven that Fox's body was found in Indiana.

■ An evidentiary device, such as a presumption, must not undermine the factfinder's responsibility at trial to find the ultimate facts beyond a reasonable doubt. *County Court of Ulster County v. Allen* (1979), 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777, 791. A presumption is not unconstitutional if there is a rational connection between the facts proved and the ultimate fact presumed. *Turner v. U.S.* (1970), 396 U.S. 398, 421, 90 S.Ct. 642, 655, 24 L.Ed.2d 610, 626; *U.S. v. Gainey* (1965), 380 U.S. 63, 66, 85 S.Ct. 754, 757, 13 L.Ed.2d 658, 662. The presumed fact must be more likely than not to flow from the basic facts proven by the prosecution. *County Court of Ulster, supra,* 442 U.S. at 165, 99 S.Ct. at 2228, 60 L.Ed.2d at 797. As a general matter, it is highly likely that the body of a homicide victim found within the state has been murdered within the state. It is rational to infer from proof of the location of the body that the crime was committed within the jurisdiction in which the body is found. The statutory presumption is sound.

The United States Supreme Court has sanctioned the use of permissive presumptions. In *U.S. v. Gainey, supra,* the jury was informed that it could infer guilt of the offenses (possession or control of an illegal alcohol distillery) from the fact of the de-

fendant's unexplained presence at the site of the still.

Now this does not mean that the presence of the defendant at the site and place at the time referred to requires the jury to convict the defendant, if the defendant by the evidence in the case, facts and circumstances proved, fails to explain his presence to the satisfaction of the jury. It simply means that a jury may, if it sees fit, convict upon such evidence, as it shall be deemed in law sufficient to authorize a conviction, but does not require such a result.

*U.S. v. Gainey, supra,* 380 U.S. at 70, 85 S.Ct. at 759, 13 L.Ed.2d at 664. The statute, upon which the instruction was based, was challenged on the grounds that it impinged on the trial judge's powers over the judicial proceeding. The Court disagreed. The statute "constitutes congressional recognition that the fact of presence [has] probative worth...." *Id.,* 380 U.S. at 68, 85 S.Ct. at 758, 13 L.Ed.2d at 663. Moreover, the statute did not prevent the jury from being instructed on the standards for reasonable doubt. *Id.*

In *Turner v. U.S., supra,* the defendant challenged the constitutionality of two statutes. The first provided that whenever a defendant is shown to have had possession of a narcotic, that possession is deemed sufficient evidence to authorize conviction of receiving, concealing and facilitating the transportation and concealment of the narcotic while knowing that it had been unlawfully imported, unless the defendant explains his possession to the satisfaction of the jury. The second statute provided that the absence of the appropriate tax stamps on a narcotic was *prima facie* evidence of a violation for illegal distribution of narcotics. The Supreme Court found that the inference of knowledge that heroin had been illegally imported from the fact of possession was sound. Therefore, the court's instructions did not violate Turner's right to be convicted only on a finding of guilt beyond a reasonable doubt and did not place impermissible pressure on him to testify. *Turner v. U.S., supra,* 396 U.S. at 417–18, 90 S.Ct. at 653, 24 L.Ed.2d at 624. The Court similarly upheld the inference

drawn from the absence of tax stamps on heroin. *Id.,* 396 U.S. at 421, 90 S.Ct. at 655, 24 L.Ed.2d at 626.

Finally, in *County Court of Ulster County v. Allen, supra,* the challenged statute provided that the presence of a firearm in an automobile is presumptive evidence of its illegal possession by all persons occupying the vehicle. The court upheld the statute because it found that it was a permissive presumption. The trial judge instructed the jury that the presumption was merely part of the prosecution's case, that it gave rise to a permissive inference only in certain circumstances, rather than a mandatory conclusion of possession, and that it could be ignored by the jury even if the defendants offered no proof to rebut it. The judge told the jury that the defendant was innocent unless it was satisfied beyond a reasonable doubt that the defendants possessed the handguns. *Id.,* 442 U.S. at 160–61, 99 S.Ct. at 2226–27, 60 L.Ed.2d at 794–95. So long as the connection between the proven fact and the presumed fact is rational, the inference is valid and constitutional. *Id.,* 442 U.S. at 165, 99 S.Ct. at 2228, 60 L.Ed.2d at 797.

■ A correct instruction would have informed the jury that in order to find McKinney guilty of the crime of murder, it must be satisfied beyond a reasonable doubt that either the conduct that was an element of the offense, the result, or both occurred in Indiana. It would, however, further advise them that they were permitted, but not required, to infer from the fact that the body was found in Indiana that the victim was murdered here.

### III.

■ Although the court did not err in refusing McKinney's tendered instruction, we nevertheless find that McKinney, in tendering his proposed instruction on territorial jurisdiction, preserved the issue for review. Based on the foregoing discussion, the jury should have been instructed on the necessity of establishing territorial jurisdiction. It is the duty of the trial court to correctly and completely present the appli-

cable law to the jury so that it can understand the case and arrive at a fair and correct verdict. The court has a duty to instruct the jury on all matters of law necessary for their information in giving the verdict. *Rodriguez v. State* (1979), 179 Ind.App. 464, 469, 385 N.E.2d 1208, 1211. The tendered instruction was correct as far as it went. Its tender was sufficient to alert the court to its duty and to preserve the question for review.

We therefore, reverse and remand for a new trial.

HOFFMAN, P.J., concurs in result and files separate opinion.

CONOVER, J., concurs.

HOFFMAN, Presiding Judge, concurring in result.

I concur with the majority opinion. I agree that territorial jurisdiction is an element that must be proven by the State when a dispute arises as to whether the trial court has subject-matter jurisdiction to try the case.[1] The defendant did properly preserve this issue by tendering an instruction to the trial court,

Ind.Trial Rule 51(C);

*State Farm v. Shuman, Admx.* (1977), 175 Ind.App. 186, 370 N.E.2d 941 (action of trial court in refusing a properly tendered instruction automatically gives the tendering party an exception to the ruling),

although, subject-matter jurisdiction may be raised at any time. *Matter of Adoption of H.S.* (1985), Ind.App., 483 N.E.2d 777.

I note that territorial jurisdiction was also discussed in *Lane v. State* (1980), Fla., 388 So.2d 1022. The *Lane* court held that the issue of territorial jurisdiction is a factual determination which is within the province of the jury to resolve under appropriate instructions.[2] *See also: Keen v. State* (1987), Fla., 504 So.2d 396. The *Lane* court

further stated that although a minority view holds that territorial jurisdiction must only be proven by a preponderance of the evidence, it agrees with the weight of authority that territorial jurisdiction must be proven beyond a reasonable doubt.

*Lane, supra;*

Annot., 67 A.L.R.3d 988 (1975).

However, I cannot agree with the majority that territorial jurisdiction is an element of the offense. As said by the majority, Indiana statutes do not define jurisdiction as an element of the offense. Furthermore, jurisdiction does not go to defendant's guilt or innocence. *See: Sizemore and Sandlin v. State* (1979), 272 Ind. 26, 395 N.E.2d 783, 787 (although a venue case, the court's rationale is applicable to this case). The court in *State v. Baldwin* (1973), Me., 305 A.2d 555 summed up the issue:

> "Venue is not an element of a crime.... A fortiori jurisdiction is not an element of a crime." (Citations omitted.)

In conclusion, if the jury finds that the trial court lacks territorial jurisdiction, the defendant may be indicted and tried in a court which maintains territorial jurisdiction. As the court in *Baldwin, supra,* stated:

> "Nevertheless we take it as true that not only an acquittal but also a conviction 'before a court having no jurisdiction is, of course, like all proceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offense.'" (Citations omitted.)

Defendant's conviction should be reversed and this cause remanded for a new trial.

---

1. Since territorial jurisdiction is often evident, it would be needless to require the State to prove territorial jurisdiction in every case.

2. If the evidence reveals beyond a reasonable doubt that the court properly maintains territorial jurisdiction, a special instruction on territorial jurisdiction need not be given to the jury. *See: Johnson v. State* (1985), Fla. 465 So.2d 499

(when all the physical and circumstantial evidence clearly indicated that all elements of the offense occurred in Florida with the only conflicting evidence being appellant's bare allegation that the acts took place outside the state, it was not necessary to give the jury a special instruction on territorial jurisdiction).