AN–HUNG YAO and Yu–Ting Lin,
Appellants–Defendants,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 35A02–1006–CR–678.

Court of Appeals of Indiana.

Sept. 22, 2011.

James H. Voyles, Jr., Tyler D. Helmond, Voyles Zahn Paul Hogan & Merriman, Indianapolis, IN, Alan D. Burke, Burke Law Office, Rochester, IN, Attorneys for Appellant An–Hung Yao.

Jeremy N. Gayed, Michael H. Michmerhuizen, Barrett & McNagny LLP, Fort Wayne, IN, R.P. Fisher, Fisher & Ireland, Wabash, IN, Attorneys for Appellant Yu–Ting Lin.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Andrew Kobe, Deputies Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Chief Judge.

### Case Summary and Issues

An–Hung Yao and Yu–Ting Lin were each charged with three counts of counterfeiting, Class D felonies; three counts of theft, Class D felonies; and one count of corrupt business influence, a Class C felony. They each filed a motion to dismiss all the charges against them. The trial court granted the motions to dismiss as to the counterfeiting charges, but denied the motions as to the remaining charges. Both sides appeal the trial court's order. In their consolidated interlocutory appeal, Yao and Lin raise two issues concerning the trial court's denial of their motions to dismiss as to the theft and corrupt business influence charges: 1) whether the trial court had jurisdiction over them; and 2) whether, as a matter of legal sufficiency, violation of a trademark constitutes theft. In its cross-appeal, the State contends the trial court erred in granting Yao's and Lin's motions to dismiss as to the counterfeiting charges, raising the issue of whether the items alleged to have been counterfeited constitute a written instrument.

Concluding the trial court lacked territorial jurisdiction because there is no evidence any conduct that is an element of the alleged offenses occurred in Indiana, we affirm that part of the trial court's

order dismissing the counterfeiting charges and reverse and remand with instructions for the trial court to dismiss the remaining charges.

*Facts and Procedural History* [1]

Yao and Lin are friends and residents of Houston, Texas. Lin operates Generation Guns, a business in Houston that imports airsoft toy guns from Taiwan and sells them. Airsoft guns resemble actual handguns, but shoot plastic pellets. Yao is a vice president at a bank in Houston. As a favor to Lin, Yao helped her set up a bookkeeping system and a computer system for the business. Yao has also accompanied Lin to some trade shows.

Heckler & Koch, Inc. ("H & K") is a firearms manufacturer which manufactures, among other firearms, the MP5 submachine gun. H & K holds state and federally registered trademarks in the shape and design of the MP5. H & K engaged Continental Enterprises, an intellectual property consulting firm based in Indiana, to investigate possible trademark infringement claims. As part of this investigation, on June 25, 2009, employees of Continental posed as potential customers and contacted Generation Guns by phone to place orders for various airsoft guns, including the GA–112, which allegedly resembles the MP5 in design. The orders were to be delivered to three different Indiana addresses, including an address in Huntington County. On July 1, 2009, a package was delivered to the Huntington County address that contained, among other things, a GA–112 airsoft gun. On August 18, 2009, an employee of Continental placed an order by e-mail for additional airsoft guns, including two GA–112s, to be delivered to the same Huntington County address. The Continental employee followed up his e-mail with a phone call to Generation Guns to confirm his order. He later received an e-mail receipt which listed the salesperson for the transaction as "Andy Yao." Appendix to [Yao's] Brief at 72. On August 26, 2009, a package was delivered to the Huntington County address that contained, among other things, two GA–112 airsoft guns. Finally, a Continental investigator visited Generation Guns in Houston on three occasions. During these visits, an employee known to the investigator as "Jackson" referred to "Jo Jo Lin" as his boss and "Andy Yao" as the "money man." *Id.* at 73. Jackson showed the investigator around the warehouse which was stacked with airsoft guns, including the GA–112. Jackson also told the investigator that if he wished to purchase more than 100 airsoft guns, only Jo Jo or Andy was able to make him a deal. The investigator met with Jo Jo, who referred to Andy as her "partner in the business." *Id.* The investigator also met someone in the office during one of his visits who introduced himself as "Andy Yao." *Id.*

Continental relayed this information to an Indiana State Police detective who filed a case report detailing Continental's investigation. The detective met with the investigator who had visited Generation Guns in Houston, and the investigator identified Yao and Lin from driver's license photos as being the persons he knew as Andy and Jo Jo from his dealings at the business. Based on this case report, the State charged both Yao and Lin with three counts of counterfeiting, three counts of theft, and one count of corrupt business influence in Huntington County Circuit

1. We heard oral argument in this case on May 25, 2011, at Merrillville High School in Merrillville, Indiana. The argument was co-hosted by Merrillville High School and State Farm, and we extend our appreciation in particular to Mike Blaize and Sharon Row for organizing the event. We also thank all faculty, staff, and students of Merrillville High School for their gracious hospitality, and commend counsel for their advocacy.

Court based upon the similarities between the GA–112 airsoft guns and H & K's MP5 firearm.

Yao and Lin each filed a motion to dismiss the charges against them, alleging the theft counts should be dismissed because a trademark cannot be stolen, the counterfeiting counts should be dismissed because the airsoft guns are not a "written instrument," and the corrupt business influence count should be dismissed because it is based solely upon the untenable theft charges. Lin also alleged in her motion that Indiana lacked jurisdiction because no part of the conduct constituting an element of the alleged offenses occurred in Indiana. After a joint hearing, the trial court granted the motions to dismiss as to the counterfeiting charges and denied them as to the theft and corrupt business influence charges. The trial court made no mention in its orders of the jurisdictional issue. In this consolidated interlocutory appeal,[2] Yao and Lin appeal the trial court's denial of their motions to dismiss the theft and corrupt business influence counts; the State cross-appeals the trial court's grant of the motions to dismiss the counterfeiting charges.

### Discussion and Decision

#### I. Motion to Dismiss Charges

■ Indiana Code section 35–34–1–4 provides a non-exclusive list of grounds for dismissing an information, including that the "facts stated do not constitute an offense" and "[t]here exists some jurisdictional impediment to conviction of the defendant for the offense charged." Ind. Code § 35–34–1–4(a)(5), (10). "The defendant has the burden of proving by a preponderance of the evidence every fact essential to support" a motion to dismiss on these grounds. Ind.Code § 35–34–1–8(f). We review a trial court's ruling on a motion to dismiss a charging information for abuse of discretion. *State v. Davis*, 898 N.E.2d 281, 285 (Ind.2008). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Reeves v. State*, 938 N.E.2d 10, 14 (Ind.Ct.App.2010), *trans. denied.*

#### II. Yao's and Lin's Appeal

#### A. Territorial Jurisdiction

■ We address first the jurisdictional argument, as jurisdiction is a threshold issue.[3] As Lin points out in her brief, the federal and Indiana constitutions provide one accused of a crime the right to be tried in the State, U.S. Const., amend. VI, and county, Ind. Const., art. 1, § 13(a), where the crime was committed. *See State v. Butler*, 353 Md. 67, 724 A.2d 657, 660 (1999) ("The roots of the territorial juris-

---

**2.** In its order on the motions to dismiss, the trial court stated that it "considers the decision made in this matter and the lack of Indiana case law relating to the specific questions and grants to the State of Indiana and the defendant[s] the right to take an interlocutory appeal." *Id.* at 19. The State subsequently filed a motion to certify the order for interlocutory appeal. The trial court granted the motion and stayed the proceedings. This court accepted jurisdiction of the appeal on July 30, 2010.

**3.** As noted in the *Facts*, only Lin advanced a jurisdictional argument in her motion to dismiss. The State contends that because Yao failed to make a separate jurisdictional argument to the trial court in his motion to dismiss, it is waived as to him on appeal. Subject matter jurisdiction derives from the Constitution or statute and may not be waived or conferred by consent. *Truax v. State*, 856 N.E.2d 116, 122 (Ind.Ct.App. 2006). Moreover, a motion to dismiss based upon lack of subject matter jurisdiction may be made at any time. Ind.Code § 35–34–1–4(b). We therefore consider the jurisdictional argument as it applies to both Yao and Lin.

diction requirement lie in the Sixth Amendment...."). Territorial jurisdiction is subject matter jurisdiction that "relates to the authority of the State to prosecute a person for an act committed within the State's territorial boundaries...." *Ortiz v. State*, 766 N.E.2d 370, 374 (Ind.2002).

The authority of the State of Indiana to institute criminal proceedings is determined by Indiana Code section 35–41–1–1, which provides that "[a] person may be convicted under Indiana law of an offense if either the conduct that is an element of the offense, the result that is an element, or both, occur in Indiana." Ind.Code § 35–41–1–1(b). "The plain, ordinary, and usual meaning of [section 35–41–1–1] clearly establishes 'in Indiana' as a prerequisite for Indiana criminal prosecutions and thus restricts the power to exercise criminal jurisdiction to Indiana's actual territorial boundaries." *Benham v. State*, 637 N.E.2d 133, 137 (Ind.1994). As noted above, the trial court may dismiss an information if there is a jurisdictional impediment to convicting the defendant of the charged offense.

 Territorial jurisdiction is a fact the State must prove beyond a reasonable doubt because "where the law has established the necessity of a certain fact for an accused to be guilty of an offense, the existence of that fact is treated much like an element of the offense." *Ortiz*, 766 N.E.2d at 374 (quoting *McKinney v. State*, 553 N.E.2d 860, 863 (Ind.Ct.App.1990), *trans. denied*). Because the State must prove territorial jurisdiction, "the issue must be submitted to the jury unless the court determines no reasonable jury could fail to find territorial jurisdiction beyond a reasonable doubt." *McKinney*, 553 N.E.2d at 863. In other words, the issue of territorial jurisdiction must be submitted to the jury with an appropriate instruction if resolution of the issue depends upon disputed facts, but if there is no serious evidentiary dispute that the trial court has territorial jurisdiction, then a special jurisdictional instruction need not be given to the jury. *Ortiz*, 766 N.E.2d at 375–76. In so stating the point, our supreme court made clear that in Indiana, the issue is a factual question as opposed to a legal one. *See id.* at 376 n. 4 (noting that "[i]n some states, territorial jurisdiction is considered a question of law to be decided by the court," but citing cases from states in which the issue is submitted to the jury in support of the position it therein endorsed).

In *Ortiz*, the defendant picked up a child outside her home in St. Joseph County ostensibly to drive her to a local park, but instead drove her elsewhere. The child testified the defendant molested her in the car within ten minutes of picking her up. The defendant appealed his conviction for child molesting stemming from this incident and, noting that St. Joseph County borders the State of Michigan, alleged the State had failed to prove the act occurred in the State of Indiana and the trial court should have instructed the jury on territorial jurisdiction. Although the evidence was conflicting on how quickly a person could drive from the child's neighborhood to Michigan, none of the testimony indicated it could be done in under ten minutes, and the child testified the molestation occurred within ten minutes of her getting into the defendant's car. Our supreme court held there was sufficient evidence to establish the crime occurred within the territorial jurisdiction of Indiana, *id.* at 375, and therefore, there was no serious evidentiary dispute requiring the jury be instructed on the issue, *id.* at 376; *cf. McKinney*, 553 N.E.2d at 863–65 (holding jury in murder trial should have been instructed on the State's duty to establish territorial jurisdiction because the defen-

dant had challenged jurisdiction from the beginning of trial and conflicting evidence and inferences on the question of whether the murder had occurred in Indiana or Ohio created a serious evidentiary dispute).

■ Our research has disclosed only a few Indiana cases addressing territorial jurisdiction, and, as in *Ortiz* and *McKinney* above, all either hold there is no serious evidentiary dispute that Indiana has territorial jurisdiction or there is a serious evidentiary dispute requiring a jury determination. However, given that Indiana Code section 35–34–1–4(a)(10) provides that the trial court may dismiss an information if there is a jurisdictional impediment to the prosecution, we believe the converse of the rule announced in *Ortiz* is also true: if there is no serious evidentiary dispute that Indiana does *not* have territorial jurisdiction, the trial court may dismiss the information as a matter of law and the issue need not be submitted to the jury.

■ In this analysis, we find it appropriate to look to the principles governing a motion for directed verdict. Pursuant to Trial Rule 50, a trial court may decide issues as a matter of law "[w]here some or all of the issues ... are not supported by sufficient evidence...." Ind. Trial Rule 50(A). When considering such a motion, the trial court may not weigh the evidence or judge the credibility of witnesses, and may only grant the motion if there is a total lack of evidence on an essential issue or the evidence is without conflict and susceptible only to an inference in favor of the accused. *State v. Boadi,* 905 N.E.2d 1069, 1071 (Ind.Ct.App.2009). On review, we apply the same standard and view the evidence in a light most favorable to the party against whom a directed verdict was entered. *Id.* at 1072. Likewise, on a motion to dismiss an information for lack of territorial jurisdiction, if the trial court—without weighing evidence or judging credibility—concludes the defendant has met his or her burden of proving there is a total lack of evidence that any element of the crime was committed in Indiana, the trial court may grant the motion as a matter of law and dismiss the information.

We believe this course is supported by our supreme court's decision in *Benham,* in which the defendant in a reckless homicide prosecution arising from a fatal boating incident on the Ohio River filed a motion to dismiss contending Indiana lacked territorial jurisdiction because the alleged criminal activity occurred entirely in Kentucky. The court held that because the "record before the trial court at the time of ruling on the motion to dismiss clearly fails to support the defendant's assertion that the charged offenses occurred outside Indiana's territorial boundaries[,]" the trial court did not err in denying the defendant's pretrial motion to dismiss for lack of territorial jurisdiction because he did not meet his burden. 637 N.E.2d at 138. The court also held that at trial, the State would have the burden of proving beyond a reasonable doubt "that sufficient components of each of the charged offenses occurred within the territorial boundaries of Indiana...." *Id.* Thus, the supreme court implicitly acknowledged the trial court's authority to grant a motion to dismiss for lack of territorial jurisdiction, but held this was not an appropriate case for such a disposition.

B. Conduct Occurring in Indiana

Yao and Lin argue—assuming for this purpose that any crime was committed, which they otherwise dispute—that no conduct or result that is an element of the offenses occurred in Indiana. The elements of the theft charges are that Yao and Lin 1) knowingly or intentionally 2) exerted unauthorized control 3) over prop-

erty belonging to H & K, namely trademarks or markings or symbols of identification 4) with the intent to deprive H & K of any part of its value or use. Ind.Code § 35–43–4–2(a).[4] For this purpose, "exert control over property" means to "obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." Ind.Code § 35–43–4–1(a). The elements of the counterfeiting charges are that Yao and Lin 1) knowingly or intentionally 2) uttered 3) a written instrument, in this case, an airsoft gun 4) in such a manner that it purported to have been made by H & K or by authority of H & K who did not give authority. Ind.Code § 35–43–5–2(a)(1)(A), (a)(1)(D). For this purpose, a "written instrument" is defined as "a paper, a document, or other instrument containing written matter and includes money, coins, tokens, stamps, seals, credit cards, badges, trademarks, medals, retail sales receipts, labels or markings (including a universal product code (UPC) or another product identification code), or other objects or symbols of value, right, privilege, or identification." Ind.Code § 35–43–5–1(t). " 'Utter' means to issue, authenticate, transfer, publish, deliver, sell, transmit, present, or use." Ind.Code § 35–41–1–27.

Yao and Lin contend that to the extent H & K's trademark could be stolen or counterfeited, it was not accomplished in Indiana because the airsoft guns were manufactured in Taiwan, shipped to Generation Guns in Texas, and then shipped from Generation Guns in Texas to fulfill an order. Yao and Lin point out the only connection with Indiana was that Indiana-based Continental investigators contacted them to place an order and then directed Generation Guns to ship the orders to an Indiana address. Citing the Uniform Commercial Code, they argue their control of the airsoft guns ended when they turned the order over to United Parcel Service for shipment—in Texas. *See* Ind. Code § 26–1–2–401(2) ("Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods. . . ."); *Kilmer v. Moneyweight Scale Co.,* 36 Ind. App. 568, 76 N.E. 271, 272 (1905) ("The delivery to the carrier . . . addressed to the [buyers] as provided for in the contract, with notice of the shipment to the [buyers], was in effect a delivery to the [buyers].").

They also cite to *United States v. Smith,* 173 F. 227 (D.Ind.1909), as factually similar to their case. In that case, an application was made to extradite two defendants to the District of Columbia to stand trial upon an indictment for criminal libel due to material published in the Indianapolis News newspaper. In an oral decision, the court noted the following facts: the defendants owned the News, composed, printed and published it in Indianapolis, and of the approximately 90,000 copies then circulated daily, approximately 2,000 were distributed outside the State of Indiana, including fifty that were placed in the mail for delivery to subscribers in the District of Columbia. *Id.* at 230. The court noted that

> Their acts are not shown by the evidence to have been acts part of which were committed in this district and part of them in Washington. It is not that kind of a case. Nor are they charged

---

**4.** We do not separately address the elements of the corrupt business influence charge, as it is premised upon the commission of a theft. *See* Ind.Code § 35–45–6–2; [Lin's] Appendix at 14 (information for corrupt business influence alleging theft as the pattern of racketeering activity). If no element constituting theft occurred in Indiana, no element of corrupt business influence did either.

with doing an act here, the effect of which results in Washington. It is not that kind of a case. Everything that the evidence shows that the defendants did, they did in the district of Indiana, in the city of Indianapolis, in the county of Marion.

*Id.* at 231. As between the two choices on these facts-one, the defendants committed a separate crime in every place where the newspapers go, or two, they committed a crime only in Indiana—the court reasoned that the second choice was "the more reasonable one, and the correct one" because there is only one publication, and that is in Indiana. *Id.* at 232. For similar reasons, Yao and Lin argue the trial court should have granted their motions to dismiss all the charges against them.

The State contends that Yao and Lin committed elements of their alleged crimes in Indiana when employees of Generation Guns discussed the airsoft guns with Continental's Indiana-based investigators over the phone and communicated by e-mail and also when they placed the airsoft guns in commerce in Indiana by shipping them here. Specifically, as to the theft charges, the State responded to the motions to dismiss by asserting Yao and Lin exerted unauthorized control of the trademark in Indiana when they sold the airsoft guns to persons in Indiana and had them delivered to an Indiana address. The State further asserts Yao's and Lin's intent to deprive H & K of the value of the trademark existed both when the sale was made to persons in Indiana and when the delivery was made in Indiana. Referring to the definition of "utter" with respect to the counterfeiting charges, the State asserts Yao and Lin transferred, delivered, and/or presented the airsoft guns to a designated location in Indiana. The State also notes that jurisdiction can exist in more than one state and, therefore, the fact that Texas might also have been able to prosecute Yao and Lin is irrelevant. *See Alkhalidi v. State,* 753 N.E.2d 625, 627 (Ind.2001) ("Two states can each have concurrent jurisdiction over a crime with the proper nexus to both."). The State therefore argues Indiana has jurisdiction over Yao and Lin and the trial court correctly denied their motions to dismiss on this basis.

■ The facts are undisputed: Generation Guns is a Texas business, receiving its wares from Taiwan. Continental investigators initiated contact with Generation Guns by telephone, by e-mail, and by personally visiting the warehouse in Texas. There is no indication Generation Guns has even a minimal internet presence, let alone a significant or interactive one aside from the use of e-mail to confirm orders.[5] There is no indication that Generation

5. In the civil context, due process requires a nonresident have "certain minimum contacts with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). In other words, the defendant must have directed purposeful conduct at the state and the plaintiff's claims must arise out of the conduct. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 713 (4th Cir. 2002), *cert. denied,* 537 U.S. 1105, 123 S.Ct. 868, 154 L.Ed.2d 773 (2003). When the conduct is internet activity, the Fourth Circuit has concluded:

a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*Id.* at 714. "Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received." *Id.; accord Bar-*

Guns attended trade shows in Indiana or otherwise specifically marketed its products to customers in Indiana. Generation Guns' sole contact with Indiana was answering a few phone calls from Indiana, receiving an e-mail originating in Indiana, sending an e-mail to a customer in Indiana, and addressing packages to be delivered to Indiana at the direction of the customer. Even assuming the allegations of the informations are true, Yao and Lin committed no purposeful conduct in or directed to Indiana.

As in *Smith*, as between the two choices—one, Yao and Lin committed a separate crime in every jurisdiction to which they sent airsoft guns, or two, they committed a crime only in the place where they actually possessed the airsoft guns—we find the second choice to be the more reasonable, and the one that comports with due process. These are not crimes which are intended to result in harm to people in Indiana such that Indiana would have an interest in protecting its citizens through the exercise of extra-territorial jurisdiction; the harm, if any, is to H & K, and there is no evidence that H & K has a presence in Indiana. Accordingly, we hold Yao and Lin have met their burden of proving there is no evidence that any element of the alleged crimes was committed in Indiana, and the trial court should have granted Yao's and Lin's motions to dismiss as a matter of law for lack of territorial jurisdiction.

Because we hold the trial court should have granted the motions to dismiss on the basis of a jurisdictional impediment to the prosecution, we need not address the substantive claims regarding the crimes themselves.

*Conclusion*

The trial court abused its discretion by denying in part Yao's and Lin's motions to dismiss. There is no significant evidentiary dispute that no element of the crimes alleged occurred in Indiana, and the informations should have been dismissed as a matter of law because of a lack of territorial jurisdiction. The judgment of the trial court is affirmed in part, reversed in part, and this case is remanded for entry of an order granting the motions to dismiss as to all charges.

Affirmed in part; reversed and remanded in part.

BARNES, J., and CRONE, J., concur.

*rett v. Catacombs Press,* 44 F.Supp.2d 717, 727–29 (E.D.Penn.1999) (declining to exercise jurisdiction based simply on the maintenance of a website accessible worldwide without accompanying active solicitation or online interaction and holding that two e-mail communications between plaintiff and defendant were insufficient to trigger personal jurisdiction).