465 So.2d 499 (1985)
Daniel Karr JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 61937.
Supreme Court of Florida.
February 14, 1985.
Rehearing Denied April 11, 1985.
*501 P. Douglas Brinkmeyer, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Barbara Ann Butler, Asst. Atty. Gen., Jacksonville, for appellee.
BOYD, Chief Justice.
This cause is before the Court on appeal from a judgment of conviction of capital felony and sentence of death. This Court has jurisdiction. Art. V, § 3(b)(1), Fla. Const.
The appellant was charged with and convicted of the first-degree murder of Jacqueline Propster. The evidence presented against appellant at trial consisted principally of inculpatory pretrial statements voluntarily made by appellant to police investigators, together with the circumstances of appellant's conflicting series of statements to police, which included false exculpatory statements; testimony about incriminating out-of-court statements made by appellant to other persons; corroboration of that testimony by tangible evidence; and testimony concerning the discovery and examination of the body of the victim. The evidence was sufficient to establish appellant's guilt of first-degree murder.

I. FACTS
State witness Linda Warren was a bartender at the nightclub where the victim Jacqueline Propster was employed as a dancer. The witness testified that at 2:45 a.m. on July 21, 1981, after the bar had closed, appellant came to the lounge and asked to see Ms. Propster, saying that he was to give her a ride home. The witness said that after checking with Ms. Propster, she told appellant that the dancer had already left. After appellant appeared to have departed the premises, Ms. Propster also left. This was the last time she was seen by her friends and co-workers.
*502 State witness Randy Thomas testified that at 10:00 a.m. on July 21, 1981, appellant arrived at Thomas's home driving a blue Buick Regal with a loose, dragging muffler and tailpipe. First, appellant told Thomas that he needed help disposing of the car because he had killed a man. According to Thomas's testimony, appellant wanted Thomas to crush the car at his father's salvage yard. Instead, Thomas suggested burning the car and sinking it in a borrow pit. Then appellant, who was on parole at the time, told Thomas it was a woman he had killed and that he had done it because "she was going to send me back." Thomas testified that he went with appellant to a borrow pit where he saw appellant empty a woman's purse, retain some of the contents, and throw a gold-colored belt into the woods. Then appellant set fire to the car. Thomas declined appellant's invitation to go and view the body. Thomas's testimony that appellant came to his home at 10:00 a.m. on July 21 was corroborated by Thomas's wife and other witnesses.
Later that day Thomas met appellant again and appellant told him that he had killed the woman by strangling her with a rope. This conversation was also heard by state witness Andy Padgett. Thomas saw that appellant was in possession of some jewelry including a ring and necklace he identified as being shown in a photograph of the victim. Thomas anonymously informed the Jacksonville sheriff's office of his knowledge of the crime. Later, Thomas called an acquaintance who was a former police officer. The former officer passed the information on to the Jacksonville sheriff's office. Thereafter, a deputy sheriff located the borrow pit, the car, and the gold belt. The officer later found the body near an unoccupied house nearby in adjacent Clay County.
The body was identified through dental X-ray records. The medical examiner testified that the cause of death was strangulation by ligature and that a rope found around the victim's neck was probably the instrument used to effect the killing. A fiber analyst testified that the rope found on the body was similar to other lengths of rope found in the vicinity where the body was found and that it was the kind of rope used for baling hay in that rural area.
A Clay County detective arrested appellant in Jacksonville on July 28, 1981. Appellant was taken to the Jacksonville sheriff's headquarters in Duval County where he signed a consent to be interviewed after being advised of his rights. During this first interview appellant said he did not know the victim and was not at the lounge where she worked on the night of her disappearance. He denied any knowledge of the murder. Following the initial interview, appellant was taken to the Clay County jail.
On August 6, appellant asked to talk to detectives again. That day, he made a series of three statements. First, he said that he went to the bar at 10:00 p.m., and that Ms. Propster agreed to meet him later. After the nightclub closed, they went to a cemetery and injected drugs. They both passed out of consciousness, and when he awoke, she was dead. Appellant's second statement of August 6 was that after taking the drugs at the cemetery, the victim passed out and appellant, at 4:00 a.m., went to Randy Thomas's house. Thomas returned to the cemetery with appellant. Then, according to this story, appellant left Thomas there with the woman. When appellant returned half an hour later, Ms. Propster was dead and Thomas said he had strangled her with his hands because she resisted his advances. Then they took the body to the empty house and the car to the borrow pit.
At 9:00 p.m. on August 6 appellant made another statement, this one written and signed. It was essentially a repetition of the earlier statement that the victim died from drugs at the cemetery. This statement also included reference to appellant's enlisting, later that morning, the aid of Randy Thomas in disposing of the car.
On August 27, 1981, appellant asked to speak to an investigator again and made his fifth statement. He said that after he *503 and Ms. Propster got together that morning, they started out for Atlanta. They drove into Georgia and had an argument. He said that he killed her in Georgia, then brought her back through Jacksonville into Clay County where he left the body. He said that he had killed her by strangling her with his hands but later put the rope around her neck in order to drag the body to where he left it.

II. ISSUES ON APPEAL OF THE CONVICTION
Appellant contends that the trial court should have granted his motion for mistrial made during the selection of the jury. Appellant asserts that during the jury selection process, when a recess in the proceedings was announced, appellant was handcuffed within the sight of at least one member of the jury venire. Appellant argues that this improperly conveyed to the prospective jurors that the bailiffs regarded appellant as dangerous or a security risk. Appellant relies on Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), and Shultz v. State, 131 Fla. 757, 179 So. 764 (1938). Upon the making of the motion for mistrial, the judge held a hearing in chambers to inquire into the circumstances of the handcuffing. The bailiffs told the court that the handcuffing was done not in the courtroom but outside the courtroom in the hall leading to the holding cell. They said that the door to the courtroom was open but that one of the bailiffs stood in the doorway to block the view from the courtroom. The appellant told the judge that he saw that at least one prospective juror saw him being handcuffed. Appellant argues that the judge should not have denied the motion for mistrial without making inquiry of the jury panel members.
In connection with our evaluation of appellant's argument, we make the following observations. (1) Defense counsel in making the motion did not specifically ask for the remedy now put forward as the only proper alternative to a mistrial  inquiring of the prospective jurors whether they had seen appellant being handcuffed. (2) The jury had not yet been selected and sworn, so a mistrial would have meant nothing except that the court would have had to begin jury selection anew with a fresh jury venire. There is no showing that any prospective juror who actually saw the incident was among the jurors later empaneled and sworn to hear the case. (3) As jury selection was still in progress, defense counsel could have asked the prospective jurors whether they had seen the handcuffing and whether they would be affected by it. Little, if any, purpose would have been served by declaring a mistrial where the problem could have been remedied through continued jury selection. Defense counsel could have tried to use such inquiry as a basis for challenging such prospective jurors for cause, or could have excused some of them peremptorily. He could have asked for additional peremptory challenges if needed to fully deal with the problem. (4) While such open inquiry by defense counsel would have informed more prospective jurors of the matter than had known of it before, the inquiry appellant says the court should have conducted would have had the same effect. On the other hand, since appellant saw which prospective juror or jurors witnessed him being handcuffed, he could have told defense counsel which one it was and defense counsel could have simply excused that juror or argued a challenge for cause at the bench.
The foregoing factors and observations are sufficient to distinguish this case from the authorities cited by appellant. This is not a case where the accused was brought into court in prison garb, shackles, or leg irons. We therefore reject appellant's argument that the possible witnessing of his handcuffing by one or more prospective jurors entitles him to a new trial.
Appellant's next argument is that the trial court erred by not giving a specific instruction that the state was required to prove beyond a reasonable doubt that Florida had territorial jurisdiction of the crime. He says that the statutory presumption of jurisdiction arising from the victim's body *504 being found in Florida, § 910.005(2), Fla. Stat. (1981), was rebutted by testimony about appellant's statement of August 27 that the murder was committed in Georgia. Appellant relies on Lane v. State, 388 So.2d 1022 (Fla. 1980), as holding that where territorial jurisdiction is in dispute, it must be proved beyond a reasonable doubt.
In Lane, this Court, while reversing a conviction on other grounds, advised the trial court to use a more specific jury instruction on the requirement of proof of jurisdiction beyond a reasonable doubt than it had used previously. We find, however, that Lane v. State is readily distinguishable from the instant case. In Lane the items of physical and circumstantial evidence in their totality showed a real conflict on the question of where the offense was committed, as defined by the jurisdictional statutes. Here, in contrast, all the physical and circumstantial evidence clearly indicated that all elements of the offense occurred in Florida. The only item of conflicting evidence was appellant's bare statement, submitted to the judge and jury as part of the state's evidence, that he had carried the woman to Georgia, killed her, and carried the dead body back. It was one of a series of inconsistent pretrial statements made by appellant. Under these circumstances, we hold that the general instructions on the elements to be proven by the state and the standard of proof to be applied were sufficient and that a special instruction on the need to prove territorial jurisdiction beyond a reasonable doubt was not required.
Next appellant argues that the trial court erred in giving the following instruction to the jury:
Inconsistent exculpatory statements can be used to affirmatively show consciousness of guilt and unlawful intent.
Appellant argues that this instruction had the effect of plainly telling the jury that appellant's pretrial statements were inconsistent, exculpatory, and conclusively probative of guilt. He argues that the instruction constituted an impermissible conclusive or mandatory presumption of appellant's guilt in violation of his rights to due process of law. Appellant also contends that the instruction was an improper judicial comment on what the evidence showed.
Appellant relies on Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), a murder case where the court held improper a jury instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The problem was that the jury could have taken the instruction as an irrebuttable presumption, rather than as a permissible inference to be used as the jury saw fit in deciding the issue of intent. Appellant also cites Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), for the proposition that a mandatory presumption, because it shifts the burden of proving innocence to the defendant, violates due process.
We find that the instruction merely made the jury aware of a legally permissible inference from certain evidence, if found, and did not have the effect of creating a mandatory or conclusive presumption. Nor did the instruction constitute a judicial comment mandating or suggesting that the jury find certain facts from the evidence. The cases cited by appellant on improper judicial comment on evidence are vastly distinguishable. It was left to the jury to determine whether the statements were inconsistent and exculpatory and even then the instruction plainly allowed the jury to consider whether such facts, if found, had any value in deciding whether there was intent or consciousness of guilt.
The instruction was a correct statement of the legal relevance of inconsistent pretrial statements. Smith v. State, 424 So.2d 726 (Fla. 1982), cert. denied, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983); State v. Frazier, 407 So.2d 1087 (Fla. 3d DCA 1982). We find the appellant's argument on this point to be without merit.

III. ISSUES ON APPEAL OF THE SENTENCE OF DEATH
The appellant contends that the trial court erred in its instructions to the jury on *505 aggravating circumstances at the sentencing phase of the trial. The court instructed only on aggravating circumstances found by the court to be supported by some evidence. The defense objected to the instruction on the aggravating circumstance of previous commission of a felony involving the use or threat of violence to the person. The defense also objected to the court's additional instruction that "robbery and burglary are felonies involving the use or threat of violence to some person."
The state introduced judgments of conviction of appellant for the previous offenses of robbery and burglary. Appellant concedes that under Simmons v. State, 419 So.2d 316 (Fla. 1982), the previous conviction of robbery was a proper aggravating circumstance and that the court's instruction to that effect was proper. But appellant contends that the trial court erred in instructing the jury that burglary is a crime of violence, citing Mann v. State, 420 So.2d 578 (Fla. 1982).
In Mann v. State, 420 So.2d 578 (Fla. 1982), this Court disapproved a finding of previous conviction of violent felony where it was supported only by a judgment of conviction for burglary. It could not be determined, we said, whether the burglary conviction encompassed a finding of commission of or intent to commit a crime of violence. Simple burglary is not per se a crime of violence but burglary may involve entering a place with intent to commit a crime of violence or may in fact involve violence in the course of its commission. Upon the subsequent appeal from resentencing to death in the Mann case, the finding of previous conviction of violent felony was approved by this Court because the state had remedied the previous deficiency in evidentiary support. "Besides relying on the evidence presented in the first sentencing proceeding, at resentencing the state introduced a copy of a Mississippi indictment charging Mann with burglary both with the intent to commit unnatural carnal intercourse and that he did commit that crime against a named female person." Mann v. State, 453 So.2d 784, 786 (Fla. 1984). Thus, whether a previous conviction of burglary constitutes a felony involving violence under section 921.141(5)(b), Florida Statutes (1981), depends on the facts of the previous crime. Those facts may be established by documentary evidence, including the charging or conviction documents, or by testimony, or by a combination of both. However, simply to instruct the jury at the sentencing phase of a capital felony trial that burglary is a felony involving the use or threat of violence for purposes of applying the aggravating circumstance in section 921.141(5)(b), without making clear that this depends on the facts of the burglary, is error.
Appellant argues that because this error could have influenced the jury to find the murder sufficiently aggravated to warrant a death sentence, it should be considered harmful under Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). We disagree.
The state introduced certified copies of appellant's previous convictions for robbery and burglary of a dwelling. The two convictions bear the same date indicating the judgments were rendered simultaneously. The burglary judgment indicates the severity of the offense as a second-degree felony, thus demonstrating that it was burglary of a dwelling or occupied building without a weapon and without violence. See 810.02(3), Fla. Stat. (1981). In an effort to mitigate the effect of the two convictions, defense counsel brought out testimony that the two judgments were rendered upon a two-count indictment and that both offenses arose from the same transaction. It is thus possible  indeed, it is thus necessary  to infer that the robbery took place in the course of the burglary. It follows that this burglary possessed some of the attributes that set robbery apart as an inherently violent crime. The burglary in question had a confrontational element in that it was accompanied by a robbery. Thus, based on the facts of the case shown by documentary and testimonial evidence, it is reasonable to suggest that the judge's instruction that this burglary was a crime *506 involving the use or threat of violence was not error.
In any event, even if erroneous, the instruction was clearly harmless under the facts of this case. Here, there was the separate previous conviction of robbery to support the finding of the aggravating circumstance. Robbery is per se a crime of violence for purposes of the statutory aggravating circumstance of previous conviction of a crime involving the use or threat or violence. Simmons v. State, 419 So.2d 316 (Fla. 1982). Moreover, the defense could still have presented evidence and argument to the jury to the effect that his previous conviction of burglary had not involved violence if that was the case.
Next appellant argues that the testimony about his statement, upon being placed in the Clay County jail, that he was on parole should have been suppressed because the warnings of constitutional rights were not renewed after the initial interrogation at the Duval County jail had ceased pursuant to appellant's request for counsel. The state responds that appellant's objection to the officer's testimony at the penalty phase was properly overruled on the ground that warnings had been given and the statement was completely voluntary. We agree. Moreover, even if there were a meritorious argument on the admissibility of the statement, we would regard the error as harmless because appellant's statement that he was on parole was not the only evidence of his being under sentence of imprisonment. The judgments of previous convictions of robbery and burglary disclosed sentences of fifteen and ten years, to be served consecutively. These sentences had been imposed in 1977. Therefore the fact that appellant was at large in 1981 revealed that either he was on parole or had escaped. In either case he was under sentence of imprisonment. White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, ___ U.S. ___, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). If appellant's convictions had been reversed on appeal the court would have prevented the admission of the prior convictions into evidence. Therefore the aggravating factor that appellant was under sentence of imprisonment was properly inferable from the evidence even without the challenged testimony about appellant's statement.
Next appellant challenges the trial court's instructions on and findings of three statutory aggravating circumstances which appellant argues were not supported by the evidence. The challenged findings are that the capital felony was committed in order to avoid arrest, that it was especially heinous, atrocious, or cruel, and that it was committed in a cold, calculated, and premeditated manner without pretense of legal or moral justification. Appellant argues that the findings were erroneous because they were all based on testimony of appellant's own pretrial statements. The trial court itself found the pretrial statements to have been "inconsistent and exculpatory," appellant argues, so they should have been found too unreliable to support findings of aggravating circumstances.
The fact that appellant gave several inconsistent statements to law enforcement authorities before trial does not preclude the use of those and other statements as evidence of aggravating circumstances where they bear indicia of reliability. Moreover, here the court's findings about the circumstances of the murder were based principally on statements appellant made to state witness Randy Thomas.
Thomas testified that appellant told him he had killed the girl because "she was going to send me back." It was permissible to infer that this statement meant that appellant feared that his victim would inform on him  for use of illegal drugs or some other prohibited activity  resulting in his being sent back to prison for violation of parole. Furthermore, in appellant's final statement to the police he said he had killed the woman (in Georgia) because she knew he was wanted for robbery in south Florida and she had threatened to inform the authorities of his whereabouts. Therefore, *507 the instruction and finding were proper.
The instruction on and finding that the murder was especially heinous, atrocious, or cruel were also proper. The victim was murdered by means of strangulation, a method of killing to which this Court has held the factor of heinousness applicable. Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976). It is permissible to infer that when perpetrated upon a conscious victim, strangulation involves foreknowledge of death, extreme anxiety, and pain. Furthermore, Thomas testified that appellant told him that after he began to choke her, the victim escaped from his car, that he chased her and caught her again, and that he had to resume strangulation three times to make sure she was dead.
The finding that the murder was committed in a cold, calculated, and premeditated manner without pretense of moral or legal justification was also supported by the evidence. This factor focuses more on the perpetrator's state of mind than on the method of killing. Hill v. State, 422 So.2d 816 (Fla. 1982), cert. denied, 460 U.S. 1017, 103 S.Ct. 1262, 75 L.Ed.2d 488 (1983). Because there was distinct proof of this factor, we reject appellant's argument that this factor and the heinousness factor were both based on the same element of proof or the same essential feature of the crime.
Finally, appellant argues that the sentencing court improperly limited consideration to only statutory mitigating circumstances. The record shows, however, that both in instructing the jury and in stating and analyzing his own findings, the trial judge gave due consideration to all the evidence presented. He considered nonstatutory as well as statutory mitigating circumstances, and instructed the jury to do the same. Appellant presented testimony about his family background, including the favorable opinions of friends, relatives, and neighbors, many of whom believed him to be non-violent and of good character. The trial judge, however, found no mitigating circumstances and we perceive no error. Appellant's argument is without merit.

IV. CONCLUSION
We have found all of appellant's arguments, both as to the conviction and the sentence of death, to be without merit. The verdict of guilt was supported by evidence and there was no reversible error as to evidence or procedure. The jury was properly instructed on sentencing and returned a recommendation of a sentence of death. The judge properly found several aggravating circumstances and no mitigating circumstances. The sentence of death was proper. See, e.g., Waterhouse v. State, 429 So.2d 301 (1982), cert. denied, ___ U.S. ___, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983). We therefore affirm the conviction of first-degree murder and the sentence of death.
It is so ordered.
ADKINS, ALDERMAN, EHRLICH and SHAW, JJ., concur.
OVERTON and McDONALD, JJ., concur in result only.