619 So.2d 261 (1993)
William Lee THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
No. 75499.
Supreme Court of Florida.
April 1, 1993.
Rehearing Denied June 10, 1993.
*262 Geoffrey C. Fleck of Friend, Fleck & Gettis, South Miami, for appellant.
Robert A. Butterworth, Atty. Gen., and Giselle D. Lylen, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
William Lee Thompson appeals the imposition of the death penalty in a second sentencing hearing, after this Court remanded Thompson's case for resentencing. We have jurisdiction[1] and affirm the imposition of the death penalty.
The procedural history of this cause reflects that on April 14, 1976, Thompson and Rocco Surace were charged by indictment with the first-degree murder, kidnapping, and involuntary sexual battery of Sally Ivester. Thompson entered a plea of guilty in the trial court but, on appeal, this Court allowed him to withdraw his plea and remanded the case for further proceedings. Thompson v. State, 351 So.2d 701 (Fla. 1977). Thompson entered a second plea of guilty and a penalty phase jury recommended the death penalty. The trial judge imposed the death penalty and this Court affirmed the trial judge's order in Thompson v. State, 389 So.2d 197 (Fla. 1980). Thompson then filed a Florida Rule of Criminal Procedure 3.850 motion, which this Court denied in Thompson v. State, 410 So.2d 500 (Fla. 1982). After this Court *263 denied the rule 3.850 motion, Thompson sought federal habeas corpus relief. Both the United States District Court and the Eleventh Circuit Court of Appeals denied Thompson relief. Thompson v. Wainwright, 787 F.2d 1447 (11th Cir.1986). Thompson then filed a second rule 3.850 motion, asserting the failure of the sentencing judge to allow presentation and jury consideration of nonstatutory mitigating circumstances in the penalty phase. The trial court denied relief, but this Court reversed under the authority of Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), and remanded for resentencing. Thompson v. Dugger, 515 So.2d 173 (Fla. 1987), cert. denied, 485 U.S. 960, 108 S.Ct. 1224, 99 L.Ed.2d 424 (1988). This second sentencing proceeding is the subject of this appeal.
The pertinent facts, as articulated by this Court in Thompson v. State, 389 So.2d 197, 198 (Fla. 1980), are as follows:
Thompson, Rocco Surace, Barbara Savage, and the victim Sally Ivester were staying in a motel room. The girls were instructed to contact their homes to obtain money. The victim received only $25 after telling the others that she thought she could get $200 or $300. Both men became furious. Surace ordered the victim into the bedroom, where he took off his chain belt and began hitting her in the face. Surace then forced her to undress, after which the appellant Thompson began to strike her with the chain. Both men continued to beat and torture the victim. They rammed a chair leg into the victim's vagina, tearing the inner wall and causing internal bleeding. They repeated the process with a night stick. The victim was tortured with lit cigarettes and lighters, and was forced to eat her sanitary napkin and lick spilt beer off the floor. This was followed by further severe beatings with the chain, club, and chair leg. The beatings were interrupted only when the victim was taken to a phone booth, where she was instructed to call her mother and request additional funds. After the call, the men resumed battering the victim in the motel room. The victim died as a result of internal bleeding and multiple injuries. The murder had been witnessed by Barbara Savage, who apparently feared equivalent treatment had she tried to leave the motel room.
In the second penalty phase proceeding, the State introduced into evidence the prior testimony of the eyewitness, Barbara Savage, whom the State was unable to locate to testify in person. The trial court found that the State had made a diligent effort to locate this witness prior to the resentencing proceeding. Next, the State introduced Thompson's prior testimony at the trial of his codefendant, Rocco Surace, in which Thompson admitted hitting the victim with a chain belt and battering her with a chair leg and a billy club. In this testimony, Thompson denied Surace's participation and confessed to the repeated beating of the victim.
Thompson presented numerous witnesses who testified in mitigation of his conviction, including a former church pastor, a church elder, a church member, an elementary school principal, and several family members. Thompson's former church pastor described Thompson as a slow learner and a follower who did not exhibit any violent or aggressive behavior. A church elder described Thompson as someone needing to be led, while the elder's wife described him as very faithful. Testifying from school records, an elementary school principal stated that Thompson had an IQ of seventy-five, had been recommended for special educational placement, and had been a follower, not a leader. Family members testified regarding the filthy home and affectionless environment in which Thompson had been raised. Thompson's ex-wife and mother of his two children described Thompson as a loving and gentle husband who was never physically violent or abusive. She also described Thompson as mentally slow and a follower and that their marriage failed partly because of his alcoholism.
In an affidavit introduced by Thompson, Barbara Savage characterized the codefendant, Rocco Surace, as the gang-leader, *264 who knew how to manipulate people. She described Thompson as a gullible and easy-going person, who was easily manipulated. However, Savage's characterization of Thompson as a person dominated by Surace was contradicted by her testimony at the original trial.
A psychologist who examined Thompson stated that Thompson was a battered child and characterized him as an extremely depressed person. The psychologist stated that Thompson's IQ was at the lowest possible level of low-average intelligence. The psychologist also found Thompson to be brain-damaged and that his touch with reality was so loose and fragile that she could not tell whether Thompson was aware of what he was doing during the assault.
A psychiatrist testified that he found Thompson to be retarded and easily led and threatened by Surace. He believed Thompson to have been brain-damaged since childhood, possibly since birth. He diagnosed Thompson as having organic brain disease and suffering from personality and stress disorders. A neurologist also testified that Thompson suffered from organic brain disease.
In rebuttal, the State called the codefendant, Rocco Surace. Surace blamed Thompson for the attack on the victim, while acknowledging that he had entered guilty pleas to the same offense. A psychiatrist presented by the State testified that he had evaluated Thompson after the incident in 1976. He found that Thompson could process information and that his memory was intact. The psychologist concluded that Thompson suffered from an inadequate personality disorder and a long-standing pattern of antisocial and impulsive behavior.
The State called another psychiatrist as an expert witness, who had seen Thompson in 1976, and, while he stated that "there was tremendous anger, rage, aggression, and diminished control with the involvement of alcohol and a number of drugs that were used," he did not feel that Thompson's conduct resulted from a mental disorder. He stated his belief that Thompson had the capacity to know what was right and what was wrong. A psychiatrist presented by the prosecution stated that he had examined Thompson in November of 1988 and had found no indication of organic brain disease or any serious deficiencies in Thompson's ability to reason, understand, or know right from wrong. He also stated that he did not believe that Thompson acted under the influence of extreme mental or emotional disturbance or that Thompson's capacity to appreciate the criminality of his conduct was substantially impaired. Furthermore, the psychiatrist stated that he did not believe Thompson acted under the substantial domination of another. Another psychologist presented by the State testified that Thompson had adequate communication skills and good general memory. He did not find Thompson to be overly susceptible to suggestion and found no evidence of major mental illness.
The jury, by a vote of seven to five, recommended the imposition of the death penalty. The trial judge imposed the death sentence, finding four aggravating circumstances, specifically that: (1) the crime was committed while Thompson was engaged in the commission of the crime of sexual battery; (2) the crime was committed for financial gain; (3) the crime was especially heinous, atrocious, or cruel; and (4) the crime was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The trial judge expressly rejected, in detail, each of the mitigating circumstances, including that Thompson lacked the capacity to appreciate the criminality of his conduct. The trial judge noted in this regard that, although Thompson's IQ score was in the dull-normal range, there was evidence that Thompson functioned on a higher level. The trial judge concluded that "the aggravating factors in this case far outweigh[ed] any possible mitigating circumstances."
Thompson raises six claims in this appeal, specifically that: (1) the trial court erred in ruling that the State's chief witness, Barbara Savage, was unavailable, thus permitting her prior testimony to be read to the jury; (2) the trial court erred by failing to grant Thompson's motion to *265 strike the jury panel and in failing to conduct an individual voir dire when it became apparent that the jury was concerned that Thompson, if sentenced to life, could be released after twelve years because he had already served thirteen years; (3) the trial court erred in permitting the State to introduce into evidence Thompson's prior inconsistent testimony, given at the trial of the codefendant; (4) the trial court erred in permitting the State to introduce into evidence photographs depicting the victim's post-trauma dissection; (5) the trial court erred in unfairly limiting the testimony of defense witnesses and prohibiting such witnesses from offering opinions as to the appropriateness of the death penalty; and (6) the trial court erred in sentencing the defendant to death, thereby denying him due process of law and equal protection rights, while imposing a disproportional, cruel, and unusual punishment under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
In his first claim, Thompson alleges that his rights of confrontation and due process were denied him when the trial court allowed the prior testimony of Barbara Savage to be read to the jury. Thompson asserts that the State failed to show due diligence in its attempt to locate the witness and that, due to the witness's last-minute unavailability, he was denied the opportunity to obtain the witness himself. The record shows that the State had filed affidavits to secure an out-of-state witness according to chapter 942, Florida Statutes (1987), had contacted the witness's former employers, and had issued a subpoena which was returned unserved.
The use of prior testimony is allowed where (1) the testimony was taken in the course of a judicial proceeding; (2) the party against whom the evidence is being offered was a party in the former proceeding; (3) the issues in the prior case are similar to those in the case at hand; and (4) a substantial reason is shown why the original witness is not available. Hitchcock v. State, 578 So.2d 685 (Fla. 1990); Johns-Manville Sales Corp. v. Janssens, 463 So.2d 242 (Fla. 1st DCA 1984), review denied, 467 So.2d 999 (Fla. 1985); Layton v. State, 348 So.2d 1242 (Fla. 1st DCA 1977). The record reflects that the prior testimony met all of these criteria.
Thompson also asserts that, because the cross-examination of Barbara Savage at the first trial was brief and he did not have the opportunity to examine her in these proceedings, his right of confrontation under the Florida and United States Constitutions was violated. We find that all that is required is that the party have an opportunity at the prior proceeding to cross-examine the witness. Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Because Thompson's cross-examination of the witness in the first trial was brief, his right of confrontation in this second sentencing proceeding is not constitutionally impaired. We conclude that the trial court did not err in declaring the witness unavailable.
Thompson, in his second claim, argues that, because the jury was aware that Thompson had already served thirteen years and could be released in as few as twelve years if the death penalty were not imposed, the jury was predisposed to recommend the death penalty. Thompson argues that the trial court should have granted his motion to strike the jury panel or, at least, have conducted an individual voir dire after it became apparent that one of the jurors was concerned that Thompson could be released within twelve years if given a life sentence. We find that this claim is without merit because defense counsel agreed that the problem could be remedied by an instruction from the trial judge that the question of parole was irrelevant to the issues before the jurors. Furthermore, this claim was not preserved for appeal by a timely objection.
Thompson's third claim involves the admissibility of his prior testimony given at the trial of his codefendant, Rocco Surace. At the Surace trial, Thompson testified that he alone was responsible for the beating death of the victim. It is argued that this testimony helped to establish as an additional *266 nonstatutory aggravating circumstance that Thompson had helped his equally guilty codefendant avoid the death penalty and, ultimately, a mandatory minimum sentence. We reject this contention and find that Thompson's prior inconsistent testimony met the requirements of section 90.801(2)(a), Florida Statutes (1987), and was admissible. The prior testimony was also admissible to support the State's case and to rebut Thompson's defense. See Johnson v. State, 465 So.2d 499 (Fla. 1985), cert. denied, 474 U.S. 865, 106 S.Ct. 186, 88 L.Ed.2d 155 (1985).
In his fourth claim, Thompson alleges that the trial court improperly admitted, at the penalty phase, the photographs of the victim's body taken during the autopsy. Thompson alleges that the trial court's admission of the autopsy photographs into evidence improperly inflamed the jury. In our view, the autopsy photographs in this instance were not essential, given the other photographs introduced. The other photographs introduced more than adequately support the claim that the murder was heinous, atrocious, or cruel. Accordingly, we find it was error to admit the autopsy photographs, but the error was harmless given the testimony of the eyewitness, the medical examiner, and the appellant himself, and the other photographs admitted into evidence. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Thompson, in his fifth claim, asserts that the trial court's refusal to allow certain defense witnesses to express their personal opinions concerning the appropriateness of the death penalty in Thompson's case improperly restricted his ability to present a defense. We find no abuse of discretion in the trial court's ruling. Floyd v. State, 569 So.2d 1225 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); Patterson v. State, 513 So.2d 1257 (Fla. 1987); Jackson v. State, 498 So.2d 906 (Fla. 1986).
In his final claim, Thompson contends that the imposition of the death penalty was in error because: (1) the trial court failed to find the existence of the statutory mitigating circumstances of age and no significant history of criminal activity, where these findings had been made in a prior sentencing hearing; (2) the trial court erroneously found that the homicide was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification; (3) the trial court failed to acknowledge the existence and applicability of numerous additional statutory and nonstatutory mitigating factors; and (4) the death penalty in Florida is unconstitutional on its face and as applied to Thompson.
In King v. Dugger, 555 So.2d 355 (Fla. 1990), we addressed the claim that a resentencing court erred by failing to find statutory mitigating factors which were found in a prior sentencing proceeding. Consistent with that decision, the fact that the first judge who sentenced Thompson found his age and lack of criminal history "in mitigation did not create any vested entitlement or right requiring the second judge to accede to the first's findings." Id. at 358. Thompson's resentencing was a "completely new proceeding, separate and distinct, from his first sentencing. A trial court is not obligated to find mitigating circumstances... ." Id. Furthermore, "a mitigating circumstance in one proceeding is not an `ultimate fact' that collateral estoppel or the law of the case would preclude being rejected on resentencing." Id. at 358-59.
With regard to his next contention, we agree with Thompson and hold that the record does not support a finding that the homicide was committed in a cold, calculated, and premeditated manner. The evidence in this case does not establish that the defendant planned or prearranged to commit the murder prior to the commencement of the conduct that led to the death of the victim. Hamblen v. State, 527 So.2d 800 (Fla. 1988). We find that the improper use of the "cold, calculated, and premeditated" aggravating factor was harmless error under the circumstances of this case.
On rehearing, Thompson now asserts that he is entitled to a new sentencing hearing because the jury instruction given *267 on the heinous, atrocious, or cruel aggravating factor was defective under the United States Supreme Court's recent decision in Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). We disagree. Given the substantial evidence in the record establishing the manner in which the victim was murdered, we find that the murder was heinous, atrocious, or cruel under any definition of the terms and beyond a reasonable doubt. Therefore, any error in the instruction was harmless beyond a reasonable doubt and did not affect the sentence recommended by the jury and imposed by the judge. Further, we note that Thompson's trial counsel did not object to the instruction read to the jury and thus failed to preserve the issue for appeal. See Sochor v. Florida, ___ U.S. ___, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992). We find that this claim is procedurally barred. Kennedy v. Singletary, 602 So.2d 1285 (Fla. 1992). We also conclude that the reading to the jury of the instruction on the heinous, atrocious, or cruel aggravator does not, under these circumstances, mandate a new sentencing hearing under Espinosa.
Based on the testimony and record in this cause, we also find no error in the sentencing court's rejection of the statutory and nonstatutory mitigating circumstances. Although there is evidence to support Thompson's contention that several statutory and nonstatutory mitigating factors should have been found, there is also evidence presented by the State that supports the trial judge's rejection of these mitigating circumstances.
Thompson's claim that Florida's death penalty is unconstitutional is without merit and has been consistently rejected by this Court. Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); Raulerson v. State, 358 So.2d 826 (Fla.), cert. denied, 439 U.S. 959, 99 S.Ct. 364, 58 L.Ed.2d 352 (1978); Proffitt v. State, 315 So.2d 461 (Fla. 1975), aff'd, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Sullivan v. State, 303 So.2d 632 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976).
Accordingly, for the reasons expressed, we affirm Thompson's sentence of death.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, KOGAN and HARDING, JJ., concur.
GRIMES, J., concurs with an opinion.
GRIMES, Justice, concurring.
I also believe that the continuing torture of the victim over a period of hours justified the finding that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. See Parker v. State, 476 So.2d 134 (Fla. 1985) (cold, calculated, and premeditated aggravating factor upheld where victim was kidnapped from convenience store and killed twenty minutes later).
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.