PER CURIAM.
This cause is before us on Patrick “Sonny” Salgat’s appeal of his conviction and sentences on the following charges: grand theft, tampering with a witness, burglary of a dwelling while armed, shooting into a building, attempted first-degree felony murder, first-degree felony murder, and possession of a firearm in the commission of a felony. Salgat raises nine issues on appeal. We find only four of those issues merit discussion.
The facts pertinent to this appeal are as follows. In the spring of 1990, Patrick.“Sonny” Salgat began harassing his former girlfriend Charlotte Blevins in an effort to rekindle their past relationship. After several weeks of phone calls, Blevins agreed to meet Salgat at her home to talk. When Salgat left her house, Blevins noticed that Salgat had stolen some of Blevins’ diamond jewelry. Blevins called the police and reported the theft. In' spite of police involvement, Salgat’s harassment continued, his calls becoming increasingly violent. When Blevins decided to drop the theft charges to appease Salgat, she was placed in contact with state attorney investigator • Steve Bolyard. Bolyard convinced Blevins to continue to pursue the pending charges against Salgat. When Sal-gat found out about the warrant issued for his arrest, he repeatedly threatened to kill Blevins. Bolyard became more concerned about Blevins’ safety and, as a result, often called Blevins or followed her home from work. On June 13,1990, Salgat was arrested by police with Bolyard’s help. Salgat was *1144 released the following day after he provided other police officers with information concerning illegal drug deals and agreed that he would no longer bother Blevins.
On the evening of June 17, 1990, Bolyard stopped by Blevins’ home to check on her. Bolyard parked his unmarked police vehicle in her driveway, leaving his gun and radio in the car. At approximately 11:15 p.m., Salgat announced himself and pounded on Blevins’ front door. According to Blevins, she became frightened and ran from the living room into the bedroom. Bolyard went to the kitchen to call police. While Bolyard was on the phone, Salgat fired two shots at him from the back porch. Both bullets entered the house through the kitchen window, with fragments striking Bolyard in the back of the head and neck. Wounded, Bolyard dropped the phone and ran out the front door. Salgat ran around the house and met Bolyard in the front yard, where he fired at least two more shots at Bolyard. One bullet struck Bolyard in the back, piercing his lung. Bolyard struggled to a neighboring house, where he later died.
Salgat ran to his'car and drove away. He eluded police for several hours, hiding at the homes of several friends. While a fugitive, Salgat told friends several versions of the events occurring the night, before. Police arrested Salgat the next day. Salgat was subsequently charged by a grand jury with grand theft, tampering with a witness, burglary of a dwelling while armed, shooting into a building, attempted first-degree murder, first-degree murder, and use of a firearm in the commission of a felony. A jury trial was held, and Salgat was convicted as charged of all counts except attempted first-degree murder and first-degree murder. On those counts, the jury crossed out the phrase “as charged” on the verdict form and wrote in “felony.” The jury recommended life in prison without the possibility of parole for 25 years. ■
Salgat received concurrent five-year sentences for grand theft and tampering with a witness. Those sentences were concurrent to fifteen years’ imprisonment for shooting into a building and possession of a firearm in the commission of a felony, which were also concurrent with each other. Those sentences were consecutive to concurrent life sentences for attempted felony murder enhanced under section 775.087, Florida Statutes, and burglary of a dwelling while armed. Finally, Salgat received a consecutive sentence of life imprisonment without parole for twenty-five years for felony murder. In short, Salgat received one life sentence without the possibility of parole for twenty-five years, followed by two concurrent life sentences followed by fifteen years.
First, Salgat argues that he cannot be convicted and sentenced for murder and attempted murder of the same victim. Since Salgat failed to raise this issue before the trial court, he has waived any double jeopardy claim as to multiple convictions. Perrin v. State, 599 So.2d 1365 (Fla. 1st DCA 1992). However, the legality of multiple sentences may be raised for the first time on appeal. Id. at 1366, citing Wright v. State, 573 So.2d 998 (Fla. 1st DCA 1991). Salgat’s argument requires us to apply section 775.021, Florida Statutes (1989), which states in part:
(4)(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
According to the sentencing guidelines, attempts to commit crimes are generally classified as included offenses. In re Standard Jury Instructions in Criminal Cases, 543 So.2d 1205, 1233 (Fla.1989). This is because once the target crime is committed, the actor’s prior conduct is deemed merged into the completed crime. There are eases in which a defendant may be convicted of murder and attempted murder of the same victim where there are two separate episodes of criminal conduct. However, that is not the case here. Salgat’s first two shots at Bolyard and the final fatal shot were all part of the same criminal episode. Thus, Salgat’s *1145 attempt merged into the completed act of killing Bolyard. We hold that under the facts of this case, it was improper for Salgat to be sentenced for attempted felony murder and felony murder of the same victim.
Second, Salgat argues that the trial court erred in enhancing the attempted first-degree murder conviction into a life felony under section 775.087(l)(a), Florida Statutes, where the jury failed to make a specific finding that he possessed a firearm during the offense. Since we have determined that Salgat was improperly sentenced for the attempted felony murder, any claim of improper enhancement is moot.
Third, Salgat argues that the trial court improperly convicted Salgat of felony murder and the underlying felony. We simply cite to the case of State v. Enmund, 476 So.2d 165 (Fla.1985). In Enmund, the Supreme Court held that the underlying felony is not necessarily a lesser-included offense of felony murder and that a defendant can be convicted of and sentenced for both felony murder and the underlying felony. Id. at 166.
Finally, Salgat asserts that the trial court erred in instructing the jury that Sal-gat’s inconsistent exculpatory statements may be used to affirmatively show consciousness of guilt and unlawful intent and cites Fenelon v. State, 594 So.2d 292 (Fla.1992) (Supreme Court held that the jury instruction on flight was an improper judicial comment on the evidence and should no longer be given). The Florida Supreme Court has already decided that such an instruction is not an improper judicial comment on the evidence. Johnson v. State, 465 So.2d 499 (Fla.1985) cert, denied, 474 U.S. 865, 106 S.Ct. 186, 88 L.Ed.2d 155. Accordingly, Sal-gat’s counsel at trial argued that the present case was distinguishable from Johnson because there was no dispute that Salgat shot Bolyard, and .therefore the instruction was unnecessary. We find that Salgat’s argument on appeal was not properly preserved for appellate review. See Graves v. State, 548 So.2d 801 (Fla. 1st DCA 1989). Therefore, we decline to address its merits and affirm the giving of the instruction based on Johnson, supra.
We do find that Salgat’s appellate counsel raises an important question about whether Johnson may be reconciled under the Supreme Court’s recent decision of Fenelon v. State, 594 So.2d 292 (Fla.1992). Accordingly, we certify the following question to the Supreme Court as a question of great public importance:
WHETHER A JURY INSTRUCTION CONCERNING A DEFENDANT’S INCONSISTENT EXCULPATORY STATEMENTS PREVIOUSLY HELD PROPER UNDER JOHNSON V. STATE CONSTITUTES AN IMPROPER COMMENT UPON THE EVIDENCE IN LIGHT OF THE COURT’S DECISION IN FENE-LON V. STATE.
For the foregoing reasons, the sentence for attempted felony murder is reversed. Ml other aspects of the judgment and sentences appealed from are affirmed.
BOOTH, BARFIELD and ALLEN, JJ., concur.