727 So.2d 193 (1998)
Paul C. HILDWIN, Appellant,
v.
STATE of Florida, Appellee.
No. 89658.
Supreme Court of Florida.
September 10, 1998.
Rehearing Denied February 25, 1999.
James B. Gibson, Public Defender and Michael S. Becker, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, for Appellant.
*194 Robert A. Butterworth, Attorney General, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
Paul C. Hildwin appeals his sentence of death. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.

PROCEDURAL HISTORY
The body of Vronzettie Cox was found in the trunk of her car with her tee shirt tied around her neck. Hildwin, age twenty-five at the time of the crime, was convicted of Cox's strangulation murder and sentenced to death, and on direct appeal this Court affirmed both the conviction and sentence. See Hildwin v. State, 531 So.2d 124 (Fla.1988) (hereinafter "Hildwin I"), aff'd, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989). Hildwin subsequently filed a 3.850 motion, which the trial court denied after holding a hearing thereon. Hildwin appealed the denial to this Court, which again affirmed as to the conviction but vacated and remanded for a new sentencing proceeding upon finding that Hildwin had been "prejudiced by the ineffective assistance of trial counsel at the penalty phase with respect to the presentation of mitigating evidence." Hildwin v. Dugger, 654 So.2d 107, 110 (Fla.1995).
On resentencing, the jury again recommended death. In its resentencing order, the trial court found four aggravators:
(1) that Hildwin committed the murder for pecuniary gain; (2) that the murder was especially heinous, atrocious and cruel ("HAC"); (3) that Hildwin had previously been convicted of prior violent felonies; and (4) that he was under a sentence of imprisonment at the time of the murder. The trial court also found two statutory mitigators, both of which it assigned "some weight": (1) that Hildwin was under the influence of an extreme mental or emotional disturbance at the time of the murder; and (2) that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. Finally, the trial court found five nonstatutory mitigators, all of which it also assigned "some weight": (1) that Hildwin had a history of childhood abuse, including sexual abuse by his father; (2) that Hildwin had a history of drug or substance abuse; (3) that he had organic brain damage; (4) that he had the ability to do well in a structured environment like prison; and (5) that his type of mental illness was readily treatable in a prison setting. The trial court, after evaluating the aggravators and the mitigators, again sentenced Hildwin to death.

ISSUES ON APPEAL
Hildwin now raises four issues on appeal, which we address in turn:

I. The Pecuniary Gain Aggravator

Hildwin argues that the trial court erred in finding the pecuniary gain aggravator, urging that the evidence was entirely circumstantial and insufficient to support the aggravator. We disagree.
Like guilt itself, aggravators must be proven beyond a reasonable doubt. See Geralds v. State, 601 So.2d 1157, 1163 (Fla. 1992); State v. Dixon, 283 So.2d 1, 9 (Fla. 1973). Although an aggravating circumstance may be supported entirely by circumstantial evidence, "the circumstantial evidence must be inconsistent with any reasonable hypothesis which might negate the aggravating factor." Geralds, 601 So.2d at 1163 (citing Eutzy v. State, 458 So.2d 755, 758 (Fla.1984)).
The resentencing record reflects that on the night of Cox's murder Hildwin and some friends (including his girlfriend) ran out of gas on their way home from a movie. None of them had any money, so Hildwin turned in soda bottles to buy gas at a nearby convenience store, but still could not get the car started. Hildwin and his friends therefore decided to spend the night in the car, but Hildwin left sometime during the night and, upon returning the next morning, had money to buy gas and sodas. Later that day, Hildwin drove Cox's car through the drive-in teller of her bank, where he forged and cashed a $75 check on her account. On an outing with some friends later that evening, Hildwin bought a pair of shorts and brought along a case of beer and a radio that *195 was later identified as belonging to Cox. Police later found the radio and a ring belonging to Cox in Hildwin's bedroom; Cox's car, with her body in the trunk, abandoned in dense woods; and Cox's purse in a leaf-covered hole between the car and Hildwin's residence.
The trial court rejected Hildwin's argument that this evidence was insufficient for the pecuniary gain aggravator to go before the jury. The State accordingly argued this aggravator in closing argument, but Hildwin's attorney did not present contrary argument on this aggravator. The jury thereafter recommended death. Both in his sentencing memorandum and at the sentencing hearing, Hildwin's attorney argued that the taking of Cox's property could have been "an afterthought" to the murder.[1] In its resentencing order, the trial court exhaustively discussed the evidence pertinent to this aggravator and ultimately found that
[t]he evidence presented during the resentencing trial, in regards to this [pecuniary gain] aggravator, leads to only one conclusion. That is, that the defendant's primary motivation for the murder was to obtain items for pecuniary gain, specifically money necessary to get his car filled with gas and running again, so that he could get his girlfriend back to her home. This Court finds, beyond and to the exclusion of every reasonable doubt, that the crime of murder committed by the defendant on Vronzettie Cox was committed for pecuniary gain. This aggravator has been clearly demonstrated by the State and proved beyond a reasonable doubt.
As a threshold matter, we find that this aggravator was properly submitted to the jury and considered by the trial court. See State v. Law, 559 So.2d 187, 188-89 (Fla. 1989). We also note that, although the trial court found that pecuniary gain was the "primary motivation for the murder," in order to establish this aggravator the state must prove beyond a reasonable doubt only that "the murder was motivated, at least in part, by a desire to obtain money, property or other financial gain." Finney v. State, 660 So.2d 674, 680 (Fla.1995) (emphasis added).
We have reviewed the record on resentencing and find that the circumstances of Hildwin's activities both before and after the murder provide substantial competent evidence that the murder was motivated, at least in part, by pecuniary gain. See id.; cf. Hill v. State, 549 So.2d 179, 182-83 (Fla. 1989). These circumstances are inconsistent with any reasonable hypothesis which might negate this aggravating factor. See Geralds, 601 So.2d at 1163.
As we held on virtually identical evidence[2] in Hildwin's first appeal:
The evidence, while circumstantial that [Hildwin] killed Ms. Cox to get money from her, is substantial. Before he killed Ms. Cox, [Hildwin] had no money and was reduced to searching for pop bottles on the road side to scrape up enough cash to buy sufficient gas to get home. After her death he had her property and had forged and cashed a check on her account. The record supports the judge's finding beyond a reasonable doubt that the killing was committed for pecuniary gain.
Hildwin I, 531 So.2d at 129. We reach the same conclusion based upon our review of the new record on resentencing.

II. The HAC Aggravator

Hildwin next argues that the trial court erred in finding that the murder was especially heinous, atrocious, or cruel ("HAC"), pointing to the lack of evidence of a struggle. We again disagree. During the resentencing proceeding, the State introduced testimony from a medical examiner *196 that Cox was strangled by a "wide band ligature" (her tee shirt), and that it took Cox "several minutes" to lose consciousness and die from strangulation asphyxia, during which time "it would [have been] a very frightening even terrorizing situation [for Cox] to be in."
The trial court discussed this evidence in its resentencing order and ultimately found that
[the medical examiner's] testimony is totally consistent with injury caused by strangulation. The one and only inference makes it clear that this murder was conscienceless, pitiousless [sic], and unnecessarily tortuously [sic] to the victim; and was inflicted with utter indifference to the suffering of the victim. During the last moments of her life, the victim surely experienced pain, anxiety, fear, and knowledge of her death.... Considering the totality of the circumstances of the murder, as the Court must do, this Court finds that this murder was clearly one by strangulation that meets the legal requirement of heinous, atrocious and cruel. This aggravating circumstance has thus been proven by the State beyond and to the exclusion of every reasonable doubt.
"[I]t is permissible to infer that strangulation, when perpetrated upon a conscious victim, involves foreknowledge of death, extreme anxiety and fear, and that this method of killing is one to which the factor of heinousness is applicable." Tompkins v. State, 502 So.2d 415, 421 (Fla.1986) (emphasis added). This Court has consistently upheld the HAC aggravator where a conscious victim was strangled. See Robertson v. State, 699 So.2d 1343, 1347 (Fla.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1097, 140 L.Ed.2d 152 (1998).
The medical examiner's uncontroverted testimony in the present case provides substantial competent evidence for this aggravator and establishes that Cox was conscious while being strangled with her own tee shirt. See, e.g., James v. State, 695 So.2d 1229, 1235 (Fla.), cert. denied, ___ U.S. ___, 118 S.Ct. 569, 139 L.Ed.2d 409 (1997); Orme v. State, 677 So.2d 258, 263 (Fla.1996), cert denied, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997); Espinosa v. State, 589 So.2d 887, 894 (Fla.1991), reversed on other grounds, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992); Hildwin I, 531 So.2d at 128-29; Doyle v. State, 460 So.2d 353, 357 (Fla.1984).

III. Doubling of Aggravators

Hildwin concedes that the State proved beyond a reasonable doubt the "prior violent felony" and "under sentence of imprisonment" aggravators.[3] However, he argues that because the very same offenses underlie both aggravators, they should have been merged and considered as only one aggravator. We reject this argument as we have previously rejected it in similar cases. See Muhammad v. State, 494 So.2d 969, 976 (Fla.1986); Bundy v. State, 471 So.2d 9, 22 (Fla.1985); Delap v. State, 440 So.2d 1242, 1256 (Fla.1983).

IV. Proportionality

Finally, Hildwin argues that the death penalty is clearly disproportionate here. We disagree. We have described the "proportionality review" conducted in this Court in every death case as follows:
Because death is a unique punishment, it is necessary in each case to engage in a thoughtful, deliberate proportionality review to consider the totality of circumstances in a case, and to compare it with *197 other capital cases. It is not a comparison between the number of aggravating and mitigating circumstances.
Porter v. State, 564 So.2d 1060, 1064 (Fla. 1990) (citation omitted) (emphasis added); see also Terry v. State, 668 So.2d 954, 965 (Fla.1996); Tillman v. State, 591 So.2d 167, 169 (Fla.1991). We first consider the mitigation evidence. The same trial judge who heard the previous 3.850 motion evaluated the testimony of the two psychological experts. The record reflects that, except for a standardized personality test, these experts performed no testing of Hildwin; rather, the experts relied on certain prior psychological reports, transcripts from Hildwin's prior legal proceedings, and interviews with Hildwin and his friends and family members.[4] However, in cross-examining these experts, the State established that none of Hildwin's prior psychological records spanning the fourteen-year period between 1970 and 1984 (during which time Hildwin was between the ages of ten and twenty-four), indicated either brain injury or psychosis.[5] While the trial court accorded "some weight" to a variety of statutory and nonstatutory mitigators, the trial court explained at length why it did not find the psychological mitigating evidence to be particularly compelling:
There is also the problem of [the psychological experts] not having talked to sufficient people who knew the defendant around the time of the crime. Dr. Berland testified that he had talked to no one who knew the defendant after 1979, and thus didn't talk to any people who had been around the defendant close to the time of the murder. John Hildwin, who presented perhaps the most emotional testimony as to the abuse his brother suffered as a child, indicated that he had not seen the defendant since 1971.
Next, it should be noted that the experts, though generally agreeing with each other, subtly differ with one another in their analysis. Dr. Maher opines that the defendant had an impaired ability to appreciate wrongness and conform his conduct based on a severe mental defect. Dr. Berland does not talk specifically about the defendant's ability to appreciate the wrongfulness of his actions and to conform his action to the requirements of law, but is of the opinion that the defendant was mentally ill at the time of the crime. Dr. Berland believes that the defendant was under the influence of mental or emotional disturbance at the time of the crime; however, Dr. Berland was not able to say that the defendant was under the influence of "extreme" emotional disturbance at the time, but only classified the defendant as suffering from a "mild to moderate" condition. Dr. Maher says that the defendant was under the influence of an "extreme" mental or emotional defect at the time of the crime.
There is also a practical conflict between the opinions of the doctors, and the psychological picture they paint of the defendant, and with the way the defendant presented himself in court, as well as the way others who knew him close to the time of the crime described him. Dr. Maher spoke with a woman, Cynthia Wriston, who had known the defendant for some time and was with the defendant the night before the murder, who described the defendant as a "nice guy." Dr. Berland testified that the defendant should not ever be properly described as "a nice guy." Violet Hoyt described the defendant as "always polite." She further said that Paul was okay around her, and never gave her any trouble. Henry Hoyt said the defendant was very nice to him whenever he saw him. Patricia Lee Hildwin, who married the defendant while he was in prison, testified that she had never seen the defendant hit anybody and never saw the defendant with a quick temper. She said that she never observed any truly bizarre behavior from the defendant. Dr. Berland had testified that [the] defendant would not have been fun to be around, and that he would have *198 been an angry, irritable, volatile, explosive person.
Hildwin does not challenge the trial court's evaluation of the evidence relating to the mental mitigating factors. Moreover, the weight assigned to a mitigating circumstance is within the trial court's discretion, and we find no abuse of that discretion here. See Blanco v. State, 706 So.2d 7, 10 (Fla.1997), cert. denied, 119 S.Ct. 96 (1998).
"While the existence and number of aggravating or mitigating factors do not in themselves prohibit or require a finding that death is nonproportional, we nevertheless are required to weigh the nature and quality of those factors as compared with other similar reported death appeals." Kramer v. State, 619 So.2d 274, 277 (Fla.1993) (citation omitted). In this case, the trial court found the existence of four statutory aggravators, all of which have been established beyond a reasonable doubt. The murder in this case was heinous, atrocious, or cruel and motivated at least in part for pecuniary gain. In addition, Hildwin had previously been convicted of two violent feloniesrape and attempted sodomy. Not only did he serve time in prison for these prior violent felonies, but he was on parole at the time of the murder.
Rather than utilizing his freedom to become a productive, law-abiding citizen, Hildwin instead committed this murder. As the trial court observed in its detailed order evaluating the aggravating and mitigating factors of this murder:
[T]he Court is struck by the stark senselessness and pure needlessness of the murder. At the time of the murder, it would appear that the defendant was decently situated materially. He had gotten out of prison and had relocated to Florida. While true that he was on parole, he lived a fairly normal life. He had a girlfriend, and he lived with his father in a mobile home in the woods. He was living like a normal citizen. The evidence of this case indicated that the defendant enjoyed the things that most of us enjoy, the company of friends, movies, and so forth. Yet, the defendant was apparently not satisfied by this peaceful coexistence. For some strange reason, not nearly understandable, even given the intense psychological scrutiny to which the defendant has been subjected, the defendant decided to commit a senseless, wasteful and unnecessary murder, apparently motivated primarily for economic gain. He brutally killed a young woman merely to acquire some money with which to put gas in his car, and for a few personal possessions with which to stock his bedroom. This ruthless, savage, cruel and unnecessary murder cannot be lawfully justified under any circumstances present in this case, even considering the mitigating factors present, and giving them some weight.
Based on our review of all of the aggravating and mitigating factors, including their nature and quality according to the specific facts of this case, we find that the totality of the circumstances justifies the imposition of the death sentence. See Porter, 564 So.2d at 1064. No two cases are ever identical, but based on our independent proportionality review, we find this case to be proportionate to other cases where we have upheld the imposition of a death sentence. See, e.g., Davis v. State, 698 So.2d 1182 (Fla.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1076, ___ L.Ed.2d ___ (1998); Lott v. State, 695 So.2d 1239 (Fla.), cert. denied, ___ U.S. ___, 118 S.Ct. 452, 139 L.Ed.2d 387 (1997); James v. State, 695 So.2d 1229 (Fla.), cert. denied, ___ U.S. ___, 118 S.Ct. 569, 139 L.Ed.2d 409 (1997); Foster v. State, 679 So.2d 747 (Fla. 1996), cert. denied, 520 U.S. 1122, 117 S.Ct. 1259, 137 L.Ed.2d 338 (1997); Pope v. State, 679 So.2d 710 (Fla.1996), cert. denied, 519 U.S. 1123, 117 S.Ct. 975, 136 L.Ed.2d 858 (1997); Rhodes v. State, 638 So.2d 920 (Fla. 1994).

CONCLUSION
Based on the foregoing analysis of the issues raised, we affirm the trial court's resentencing order imposing the death sentence upon Hildwin.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] Hildwin makes this same unelaborated assertion in his initial brief. At oral argument, Hildwin's counsel speculated that Hildwin took Cox's property as an afterthought to what began as a consensual sexual encounter, but ended in Cox's death. Although the State presented evidence at Hildwin's first trial that Cox had been raped, see Hildwin v. State, 531 So.2d 124, 125-28 (Fla. 1988), aff'd, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989), no evidence of a sexual encounter, consensual or otherwise, was presented at resentencing, and we do not consider it here.
[2] Much of the evidence on this issue on resentencing consisted of reading prior trial testimony into the resentencing record.
[3] Hildwin had previously been convicted of rape and attempted sodomy, and was on parole at the time of the murder. Even though Hildwin concedes that the State proved the existence of these prior violent felonies, he nevertheless argues on appeal that the trial court abused its discretion by allowing the State to introduce prior testimony of a New York police officer regarding these felonies. Specifically, Hildwin contends that the testimony was inadmissible because the State failed to allege sufficient efforts to locate the officer. Hildwin did not object to this testimony below. Thus, we need not reach the merits of this point except to note that the record establishes that the State exercised due diligence in making a good faith effort to locate the officer. See Thompson v. State, 619 So.2d 261, 265 (Fla. 1993); Jackson v. State, 575 So.2d 181, 187 (Fla. 1991); Hitchcock v. State, 578 So.2d 685, 691 (Fla.1990), vacated and remanded on other grounds, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992).
[4] The record reveals no medical evidence of brain damage and no objective psychological testing specifically designed to test for brain damage.
[5] Indeed, the oldest of these records from 1970 affirmatively indicated that Hildwin did not appear to be brain damaged at the age of ten.